FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>        Plaintiff,<br><br>   v.<br><br>CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, and CORIANT OPERATIONS, INC.,<br><br>        Defendants. | Civil Action No. **2:16-cv-1302-JRG**<br>**LEAD CASE**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, AND CORIANT OPERATIONS, INC.'S MOTION TO EXCLUDE CERTAIN TESTIMONY AND OPINIONS OF JOHN DALLESASSE AND TO STRIKE PORTIONS OF HIS REPORT**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

    **A. Oyster repeatedly serves deficient infringement contentions that fail to disclose how Coriant's products allegedly infringe Oyster's patents** .............. 2

    **B. Oyster serves a deficient report from its expert, Dr. Dallesasse** ....................... 3

III. ARGUMENT ..........................................................................................................................5

    **A. The Court should exclude Dallesasse's Report and testimony on products and claims for which he fails to provide a limitation-by-limitation analysis** .. 5

        1. Under FRE 702, an expert's opinions must be reliable and relevant.................. 5

        2. Dallesasse's infringement opinions for several Coriant products are unreliable and irrelevant because they fail to analyze each claim limitation ...................... 6

    **B. The Court should strike and exclude Dallesasse's analysis and testimony where it improperly raises new infringement theories and analyzes products that Oyster did not previously chart** ..................................................................... 9

        1. An infringement expert cannot raise new infringement theories and analyze new products ..................................................................................................... 9

        2. Dallesasse improperly raises new infringement theories that Oyster failed to disclose in its infringement contentions ........................................................... 10

IV. CONCLUSION ....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Anascape, Ltd. v. Microsoft Corp.*, No. 06-158, 2008 WL 7180756
(E.D. Tex. May 1, 2008) ............................................................................................... 10, 15

*Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241 (Fed. Cir. 2000) ................................ 6

*Biscotti Inc. v. Microsoft Corp*., No. 13-1015, 2017 WL 2267283 (E.D. Tex. May 24, 2017) .... 10

*Commissariat a L'Energie Atomique v. Samsung Elecs. Co.*, 524 F. Supp. 2d 534
(D. Del. 2007) ....................................................................................................................... 8

*Computer Acceleration Corp. v. Microsoft Corp*., 503 F. Supp. 2d 819
(E.D. Tex. 2007) ................................................................................................................... 9

*Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................. 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ....................................................... 6

*Eugene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.,* 701 F. Supp. 2d 1068
(W.D. Wis. 2010) .................................................................................................................. 8

*Fujitsu Ltd. v. Tellabs, Inc.*, No. 09 C 4530, 2013 WL 2300782
(N.D. Ill. May 24, 2013) ........................................................................................... 12, 13, 15

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) .................................................................. 6

*L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311 (Fed. Cir. 2006) ..................................................... 7

*Magnetar Techs. Corp. v. Six Flags Theme Parks I*nc., 2014 WL 529983 (D. Del. 2014) ............ 6

*Medtronic Inc. v. Boston Sci. Corp*., 558 Fed. Appx. 998 (Fed. Cir. 2014) .............................. 6, 7

*Medtronic Vascular, Inc. v. Boston Scientific Corp*., No. 2:06-cv-78, 2008 WL 2744909
(E.D. Tex. Jul. 11, 2008)........................................................................................................ 8

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 248 Fed. Appx. 199
(Fed. Cir. 2007) ..................................................................................................................... 6

*Opal Run LLC v. C & A Mktg., Inc.*, No. 16-24, 2017 WL 3381344
(E.D. Tex. May 15, 2017) .................................................................................................... 10

*Realtime Data, LLC v. Packeteer*, *Inc.*, No. 08-144, 2009 WL 2590101
(E.D. Tex. Aug. 18, 2009) ..................................................................................................... 9

*Smith & Nephew, Inc. v. Arthrex, Inc*., No. 2:07–cv–335–TJW–CE, 2010 WL 457142
(E.D. Tex. 2010) ................................................................................................................... 8

*Sycamore IP Holdings LLC v. AT&T Corp.*, No. 16-588, 2017 WL 4517953
(E.D. Tex. Oct. 10, 2017)..................................................................................................... 10

*TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360 (Fed. Cir. 2002) ................................................. 6


**Rules**

Fed. R. Civ. P. 26 ......................................................................................................................... 8

Fed. R. Civ. P. 37 ......................................................................................................................... 8

Fed. R. Evid. 702 ......................................................................................................................... 6

P. R. 3-1 ....................................................................................................................................... 2

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

I. **INTRODUCTION**

Plaintiff Oyster has repeatedly refused to disclose how it contends Defendant Coriant's[1] products allegedly infringe the sole remaining patent-in-suit. Oyster's failure to comply with its disclosure obligations began early in this case, when it served its Local Patent Rule Infringement Contentions. As Coriant twice detailed for Oyster during discovery, Oyster's Infringement Contentions were prejudicially deficient in setting forth meaningful claim charts. Oyster's Rule 26 infringement expert report is more of the same. In his Report, Oyster's expert, Dr. Dallesasse, fails to provide basic foundation for his assertion that many of Coriant's products infringe certain claims of the patent-in-suit. When he does attempt to provide analysis, Dallesasse presents infringement theories and opinions that Oyster failed to disclose in its Infringement Contentions. The Court should strike and exclude Dallesasse's Report and testimony for at least two reasons.

*First*, Dallesasse's Report fails to provide sufficient foundation to support his conclusion that 24 separate Coriant products infringe each asserted claim. To be admissible under FRE 702, Dallesasse's infringement opinions must have a reliable foundation. For those opinions to have a reliable foundation, Dallesasse must have considered each limitation of each asserted claim in comparison to each accused product. Yet Dallesasse failed to do that here. Indeed, Dallesasse failed to provide *any* analysis on how many of the products meet certain limitations. His opinion that those products infringe those claims thus lacks sufficient foundation.

*Second*, the analysis Dallesasse does provide rests on newly minted infringement theories directed to products that Oyster failed to analyze in its Infringement Contention claim charts. Under the Local Patent Rules, Oyster needed to timely disclose its theories and accused products. Oyster failed to do that. And its attempt to add new theories through Dallesasse's Report

---

[1] "Coriant" collectively refers to Defendants Coriant North America, LLC, Coriant Operations, Inc., and Coriant (USA) Inc.

prejudices Coriant, at least because Coriant can no longer seek claim constructions and relevant discovery related to those theories—the very harm the Patent Rules were designed to prevent.

## II. BACKGROUND

### A. Oyster repeatedly serves deficient infringement contentions that fail to disclose how Coriant's products allegedly infringe Oyster's patents

In April 2017, Oyster served its original infringement contentions. (Ex. 1,[2] Oyster's Original Infringement Contentions). They were deficient. So Coriant sent a 13-page letter to Oyster detailing those deficiencies. Put simply, Oyster "fail[ed] to sufficiently identify or chart a single accused instrumentality as required by P.R. 3-1(b) and (c)." (Ex. 2, 6/7/17 Smith Ltr., at 1).

For starters, Oyster failed to provide a "specific-as-possible" "identification" of the "accused instrumentalities" as required under P.R. 3-1(b). Oyster instead listed six general Coriant product lines and broadly stated that "*all* versions and variations" of those lines and "*all* components, modules, submodules, and pluggables compatible therewith" infringed. (Ex. 1, at 3–4 (emphasis added)). But each Coriant product line includes a modular platform, sometimes called a "shelf/card" configuration; each shelf has empty slots into which a user can insert cards or modules; and each shelf's functionality and features vary depending on which modules are used. (Ex. 2, at 2). So Oyster's listing of product *lines* was really no disclosure at all.

Oyster also failed to disclose "[a] chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality." P.R. 3-1(c). Indeed, Oyster's charts failed to mention certain product lines altogether. And even for those mentioned, the charts failed to identify where in those product lines "each element of each asserted" claim could

---

[2] The exhibit citations in this motion reference the exhibits to the Declaration of Kurt C. Riester in support of this motion.

2

be found. Coriant detailed several examples of these charting deficiencies in its letter. (Ex. 2, at 3–12).

Months later, Oyster provided updated contentions. (Ex. 3, Oyster's First Amended Infringement Contentions). But the new contentions were just as deficient as the old. So Coriant again wrote to Oyster. (Ex. 4, 10/19/17 Smith Ltr.). Coriant explained that Oyster had again failed to meet P.R. 3-1's requirements. This time, Oyster had named the *over-100* products that Coriant had listed in an interrogatory response. (Ex. 3, at 3–7). And even though Coriant's interrogatory response did not include any information suggesting that any of the listed products fell within the scope of the claims, Oyster nonetheless alleged that every single product infringed all *176* then-asserted claims in eight patents-in-suit. (*Id*., at 2–3). Yet Oyster failed to identify which products—or product combinations—it accused for each asserted claim, and failed to fully chart alleged infringement for even a single product. (Ex. 4, at 2–3).

After the Court issued its claim construction, Oyster again amended its contentions. (Ex. 5, Exhibit C to Oyster's Second Amended Infringement Contentions). But instead of fixing the above deficiencies, Oyster merely added a conclusory equivalents allegation. (*E.g.* Ex. 5, at 35). In short, all three versions of Oyster's contentions failed to meet P.R. 3-1's requirements.

### B. Oyster serves a deficient report from its expert, Dr. Dallesasse

Oyster has continued its deficient disclosures with the recently served report of its infringement expert, Dr. Dallesasse. (Ex. 6, Dallesasse Report).

Dallesasse first defines five "groups" of Coriant products that he purports to address: "7100 40G DQPSK Products"; "hiT 7500 40G DPSK Products"; "hiT 7300 100G Products"; "AC100-Based Products"; "CFP2-Based Products" (Ex. 6, at ¶¶ 73-78). Each group includes one

or more products, for a total of twenty-four products—only *two* of which were even partially charted in Oyster's contentions.[3]

From there, Dallesasse concludes that all 24 products infringe all asserted claims from the sole remaining patent-in-suit: claims 5, 10, 18, 22, 25, 29, 33, and 38 of the '327 patent. (Ex. 6, at ¶¶ 93–95). But Dallesasse's analysis does not support his conclusion. Indeed, Dallesasse fails to address *entire* limitations for certain product groups.

Take Dallesasse's analysis of claim limitation "5[a]" of the '327 patent, which requires "a photodiode and a [linear] or logarithmic amplifier scaling an output of the photodiode." Dallesasse opines that each group meets this limitation. (Ex. 6, at ¶¶ 94, 171). Yet he fails to map this limitation onto the "7100 40G DQPSK Products." For example, Paragraphs 172–76—which purport to map the "photodiode" limitation onto the other accused groups—have no analysis of the "7100 40G DQPSK Products." (Ex. 6, at ¶¶ 172–176). The same goes for Paragraphs 177–82 for the "linear or logarithmic amplifier" portion of the "5[a]" limitation. (*Id.*, at ¶¶ 177–82).

These types of omissions pervade the Report. The table below identifies which claim limitations (*e.g.*, "5[a]") Dallesasse fails to address for certain product groups (*e.g.*, "7100 40G DQPSK Products"), along with the corresponding Paragraphs from his Report (*e.g.*, "(172–82)") from which the analysis is missing:

---

[3] One of the products addressed in the report—I04100G-1/CQP—does not exist. (Ex. 7, Kahn Noninfringement Report, at ¶ 72).

| Table 1: Missing Analysis - Alleged Infringement of US 7,620,327 | | | | | | |
|---|---|---|---|---|---|---|
| Group | Claims | | | | | |
| | 5 | 18 | 22 | 29 | 33 | 38 |
| 7100 40G DQPSK Products | 5[a] (172–82) | 18[a] (215) | | 29[a] (232) | | 36[e] (243–45) 36[f] (246–49) 36[g] (250–54) 38[a] (256) |
| hiT 7500 40G DPSK Products | | | 22[a] (218–21) | | 33[a] (235) | 36[e] (243–45) 36[f] (246–49) 36[g] (250–54) |
| hiT 7300 100G Products | | | 22[a] (218–21) | | 33[a] (235) | |

Finally, as discussed in more detail in Section III.B below, where Dallesasse does provide analysis, he raises new infringement theories and analysis that Oyster failed to disclose in its Infringement Contention claim charts.

## III. ARGUMENT

The Court should strike and exclude several portions of Dallesasse's Report and opinions for at least two reasons. First, because he does not provide analysis for each limitation of the asserted claims, Dallesasse has insufficient foundation for his conclusion that several Coriant products infringe certain claims. Second, Dallesasse improperly relies on theories that Oyster failed to disclose in its Infringement Contentions.

### A. The Court should exclude Dallesasse's Report and testimony on products and claims for which he fails to provide a limitation-by-limitation analysis

#### 1. Under FRE 702, an expert's opinions must be reliable and relevant

Under Federal Rule of Evidence 702, a qualified expert may testify only if:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

5

> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The proponent of expert testimony must thus show by a preponderance of the evidence that, among other things, the testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). Dallesasse's Infringement Report and opinions are neither reliable nor relevant for at least some products and claims here.

### 2. Dallesasse's infringement opinions for several Coriant products are unreliable and irrelevant because they fail to analyze each claim limitation

Determining whether an accused product infringes a patent claim is a two-step process. The first step is to interpret the claims. *TechSearch, LLC v. Intel Corp.*, 286 F.3d 1360, 1369 (Fed. Cir. 2002). The second step is to compare the properly construed claims to the accused product. *Id*. This second step must be performed on a limitation-by-limitation basis: "If any claim limitation is absent from the accused device, there is not literal infringement as a matter of law." *Bayer AG v. Elan Pharm. Research Corp.,* 212 F.3d 1241, 1247 (Fed. Cir. 2000).

This bedrock limitation-by-limitation principle applies with equal force to expert testimony. Indeed, for an infringement expert to have "sufficient foundation" for his opinions, he must "consider *each limitation of each asserted claim* in comparison to each accused product …." *Medtronic Inc. v. Boston Sci. Corp*., 558 Fed. Appx. 998, 999 (Fed. Cir. 2014) (emphasis added); *see also MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp*., 248 Fed. Appx. 199, 203 (Fed. Cir. 2007) (affirming exclusion of infringement expert as unreliable where expert failed to show "that all the claim limitations are met"); *Magnetar Techs. Corp. v. Six Flags Theme Parks I*nc., 2014 WL 529983, *6–*12 (D. Del. 2014) (striking infringement

expert's opinion "because it is void of the necessary analysis for comparing *each element* of the claim to the accused product" (emphasis added)).

The Federal Circuit's analysis in *Medtronic* is instructive. There, the district court had found that the patentee's expert's infringement opinions "lacked sufficient foundation" because the expert had failed to consider "each limitation of each asserted claim in comparison to each accused product before rendering his infringement opinions." *Medtronic.*, 558 Fed. Appx. at 999. The Federal Circuit agreed. In doing so, it explained that the district court had properly analyzed "an example" of the patentee's expert's analysis of a claim and was "unable to locate any reference to this claim's 'sense amplifier' limitation." *Id*. at 1000. Because the expert was "require[d]" but failed to "opine on the presence of structure meeting every claim limitation," he was "an unreliable infringement expert." *Id*.

Like the unreliable expert in *Medtronic*, Dallesasse failed to consider each limitation of each asserted claim in comparison to each accused product. As shown above in Table 1, Dallesasse failed to provide *any* analysis for some limitations of the asserted claims from the '327. His opinion that those products infringe those claims thus "lack[s] sufficient foundation," and he is therefore an "unreliable infringement expert" at least for those products and claims. *Id*.

To the extent, moreover, that Oyster tries to argue that Dallesasse somehow relied on representative examples to show infringement across all product "groups," it would make no difference here. Oyster must prove that each accused product includes each asserted claim limitation even though there are many products at issue. *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006). A "patentee 'cannot simply assume that all of the accused products are like the one [its] expert tested and thereby shift to the accused infringer the burden to show that is not the case.'" *Medtronic Vascular, Inc. v. Boston Scientific Corp.*, No. 2:06-cv-78, 2008

WL 2744909, at *3 (E.D. Tex. Jul. 11, 2008) (quoting *L & W*, 471 F.3d at 1318); *Eugene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.,* 701 F. Supp. 2d 1068, 1080 (W.D. Wis. 2010).

Here, Dallesasse does not even purport to rely on a representative product group to show infringement of other groups, much less explain "why they are representative and how their particular properties or components directly infringe each and every element of a claim." *Commissariat a L'Energie Atomique v. Samsung Elecs. Co.*, 524 F. Supp. 2d 534, 541 (D. Del. 2007) (patentee "must specify which modules are representative of a particular series or group, why they are representative and how their particular properties or components directly infringe each and every element of a claim"). Thus, Oyster cannot save Dallesasse's unreliable infringement opinions by concocting a "representative product group" theory of infringement.

Nor can Oyster cure these failings by arguing that Dallesasse conducted the necessary analysis but simply missed putting it in his Report. Under Rule 26, Dallesasse's Report needed to include the "basis and reasons" for his opinions. Fed. R. Civ. P. 26(a)(2)(B)(i). Because it lacked a limitation-by-limitation analysis, Dallesasse's Report lacked the "basis and reasons" for his infringement conclusion. And because his Report omitted such "bas[es] and reasons," he cannot now testify about them at trial. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26[,] . . . the party is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless."); *Smith & Nephew, Inc. v. Arthrex, Inc.*, No. 2:07-cv-335-TJW-CE, 2010 WL 457142, *7–*9 (E.D. Tex. 2010) (explaining that the expert "may not testify beyond the scope of his expert report" as it "would unfairly prejudice [the defendant] and defeat one of the primary purposes that the expert report serves").

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

In sum, because Dallesasse failed to apply the limitation-by-limitation standard here, the Court should strike and exclude his Report and opinions on the product groups and claims identified in Table 1 above.

### B. The Court should strike and exclude Dallesasse's analysis and testimony where it improperly raises new infringement theories and analyzes products that Oyster did not previously chart

Under the Patent Rules, Oyster was required to disclose its infringement theories in its Infringement Contention claim charts. Yet Oyster now discloses new theories and analysis of products in Dallesasse's Report that it failed to previously disclose. This prejudices Coriant. Had Oyster disclosed such new theories and analysis before claim construction and the close of fact discovery, Coriant could have sought additional claim constructions and relevant third-party discovery. The Court should thus strike those portions of his Report that have no support in Oyster's claim charts.

#### 1. An infringement expert cannot raise new infringement theories and analyze new products

The Patent Rules "exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). The Rules thus require patentees to serve "reasonably precise and detailed" contentions so defendants have "adequate notice of the plaintiff's theories of infringement." *Realtime Data, LLC v. Packeteer, Inc.*, No. 08-144, 2009 WL 2590101, at *5 (E.D. Tex. Aug. 18, 2009). This notice "focus[es] discovery" and "narrow[s] issues for *Markman*, summary judgment, [and] trial." *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005).

Given this framework, an expert cannot introduce infringement theories that the patentee failed to disclose in its contentions. *Opal Run LLC v. C & A Mktg., Inc.*, No. 16-24, 2017 WL

9

3381344, at *2 (E.D. Tex. May 15, 2017) (striking portions of expert report that exceeded scope of infringement contentions); *cf. Anascape, Ltd. v. Microsoft Corp.*, No. 06-158, 2008 WL 7180756, *4 (E.D. Tex. May 1, 2008) (striking portions of expert report that exceeded scope of invalidity contentions). The reason for this is plain: If patentees were permitted to inject new theories into the case through experts, it would prejudice the accused infringer, whose "case and claim construction strategy" necessarily hinged on the theories in the contentions. *Biscotti Inc. v. Microsoft Corp.*, No. 13-1015, 2017 WL 2267283, at *4 (E.D. Tex. May 24, 2017). It would, simply stated, create the very "uncertainty that the Local Patent Rules are designed to avoid." *Sycamore IP Holdings LLC v. AT&T Corp.*, No. 16-588, 2017 WL 4517953, at *5–*6 (E.D. Tex. Oct. 10, 2017) (Bryson, C.J.).

### 2. Dallesasse improperly raises new infringement theories that Oyster failed to disclose in its infringement contentions

The Court should strike and exclude Dallesasse's analysis and testimony that injects new theories into this case. For the Court's convenience, Coriant provides a chart in Appendix A identifying which portions should be struck on these grounds.

#### a. Claims 5, 18, 29, and 38: "linear or logarithmic amplifier"

In its Contentions, Oyster failed to disclose what part of the accused products allegedly correspond to the claimed "amplifier." Indeed, except for quoting the claim language, Oyster did not even mention the word "amplifier." (Ex. 5, at 31–34, 38–39, 41, 43). Instead, it compared the "a photodiode and a [linear] or logarithmic amplifier" limitation with three entire complex block diagrams—each of which contained dozens of interconnected components—without ever suggesting what corresponds to the "amplifier." (Ex. 5, at 31–34).[4]

---

[4] ███████████████████████████████████████████████████████████ simply referring to an entire complex diagram did not put Coriant on notice of Oyster's infringement

10

Yet Dallesasse now opines that all five product "groups" meet this "amplifier" limitation. (Ex. 6, at ¶¶ 94, 177, 215, 232, 256). And in doing so, he identifies for the first time—for at least some accused products—what components allegedly correspond to the "amplifier." (Ex. 6, at ¶¶ 177–182).

This late disclosure prejudices Coriant. First, had Coriant known about this theory, it would have sought construction of ▮▮▮▮. That is because the parties now dispute whether ▮▮▮▮ (*Compare* Ex. 6, at ¶¶ 178–179 ▮▮▮▮ *with* Ex. 7, at ¶¶ 149–150 (disagreeing)). Second, Coriant would have also sought relevant third-party discovery. For example, to argue that some products include a ▮▮▮▮, Dallesasse relies on ▮▮▮▮ (Ex. 6, at ¶ 178). Coriant thus could have sought discovery from ▮▮▮▮ to obtain evidence showing that this is not ▮▮▮▮, and to investigate whether the datasheet is actually representative of ▮▮▮▮. As it stands now, though, Coriant is left to rely on its expert's competing understanding of this component.

In short, because Dallesasse's "linear or logarithmic amplifier" theories were not disclosed in Oyster's Contentions, the Court should strike and exclude the portions of his Report (Ex. 6, at ¶¶ 177–82; 215; 232; 256) and opinions that discuss them.

---

theory. Indeed, the part shown in the third diagram (S42025-L5239-A100) is no longer accused. And again, Oyster compared the diagram to the limitation without ever pointing to the claimed amplifier. (Ex. 5, at 31–34).

[5] Oyster failed to produce this datasheet during fact discovery. (Ex. 8, 1/11/18–1/16/18 email chain, at 2 (identifying ▮▮▮▮ as a document cited by Dr. Dallesasse but not produced)).

11

### b. Claims 10, 14, and 25: "threshold[s] indicat[ing] a drop in amplitude"

Oyster's only "analysis" on this limitation in its Contentions was its conclusory statement that, "on information and belief," the accused products "practice this claim." (Ex. 5, at 34). At best, Oyster generically alleged that a Coriant specification document ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 5, at 35–36 (citing 18 pages of a document and a nearly full-page block diagram)). But Oyster never identified which of these was the claimed "thresholds." And as for "indicat[ing] a drop in amplitude," Oyster pointed to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—even though the claims are directed to "transceiver card[s]"—a piece of *hardware*. (Ex. 5, at 35).

Yet now, Dallesasse asserts a new theory to support his conclusion that each product group meets this limitation. (Ex. 6, at ¶¶ 94, 185, 211, 213, 228–29). Gone is any mention of the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ or any discussion of non-specific ▓▓▓▓▓▓▓▓ and so on. Dallesasse instead addresses (incorrectly) *completely different* aspects of *completely different* products. (Ex. 6, at ¶¶ 185–192). For the so-called "hiT 7300 100G Products," for instance, Dallesasse alleges that the claimed "thresholds indicat[ing] a drop in amplitude" map onto ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. (Ex. 6, at ¶¶ 185–186).

Dallesasse's new theories should be struck. Oyster cannot point to one device in its Infringement Contention claim charts but then have its expert point to something completely different in his report. *See Fujitsu Ltd. v. Tellabs, Inc.*, No. 09 C 4530, 2013 WL 2300782, at *2–*7 (N.D. Ill. May 24, 2013) (striking under E.D. Tex. P.R.s portions of infringement report that relied on components and devices the patentee had not analyzed in its infringement contentions). *Fujitsu* is instructive. The patentee there, like Oyster here, tried to add new infringement theories though its expert's report by having him analyze products and components that were omitted from its contentions. *Id*. at *4–*5. The court rejected the patentee's attempt and struck the new

12

theories. *Id*. at *7. In doing so, it rejected the patentee's argument that, because the theories it *had* disclosed in its contentions would apply similarly to the newly-analyzed products, its failure to disclose them was harmless. The accused infringer, the court explained, had not had sufficient notice of the new theories and "was not required to guess that [the patentee's] theory of infringement also included these additional, unnamed [products]." *Id*. at *6–*7.

The court's analysis in *Fujitsu* applies with even greater force here. Unlike the patentee in *Fujitsu*, Oyster has no basis to even argue that the theories it disclosed in its contentions (*e.g.*, ▆▆▆▆ for "indicat[ing] a drop in amplitude") would apply similarly to Dallesasse's newly identified components and products (*e.g.*, ▆▆▆▆ for "indicat[ing] a drop in amplitude"). The Court should therefore strike and exclude Dallesasse's Report (Ex. 6, at ¶¶ 185-192, 213, 229) and opinions on "threshold[s] indicat[ing] a drop in amplitude."

### c. Claim 1: "plurality of thresholds"

Dallesasse contends that the hiT 7300 100G Products include a "plurality of thresholds." (Ex. 6, at ¶¶ 160–62, 185). According to Dallesasse, these products' purported use of "▆▆▆▆ satisfies this limitation. (*Id*., at ¶ 162). But Oyster failed to disclose its infringement theory on these products in its Contentions. Indeed, Oyster never mentioned the word "▆▆▆▆—much less explain how it allegedly constitutes multiple thresholds. (Ex. 5, at 25–31).

This new theory prejudices Coriant at least because Coriant would have sought construction of "plurality of thresholds" had Oyster timely disclosed it. Prior to Dallesasse's Report, this claim term seemed clear to Coriant. Now, Coriant's expert is forced to dispute the novel theory that ▆▆▆▆ involves a "plurality" of thresholds. (*Compare* Ex. 6, at ¶¶ 160–62 (alleging the use of ▆▆▆▆ constitutes multiple thresholds) *with* Ex. 7, at ¶¶ 135–38 (disagreeing)).

13

Because Coriant had no notice of Dallesasse's "plurality of thresholds" theory for the hiT 7300 100G Products, the Court should strike the portions of his Report (Ex. 6, at ¶¶ 160–62, 185) that discuss it and should exclude any testimony about it.

### d. Claims 10, 14, and 25: "phase modulation"

Claims 10, 14, 25 of the '327 patent each require a variant of "phase modulation." (Ex. 6, at ¶¶ 185, 213, 228). The Court has construed "phase modulate" (and related variations) to require, among other things, "altering the phase of light while keeping the amplitude of the light *constant*." (ECF 190 at 10–18 (emphasis added)).

Before the Court issued its claim construction, Oyster had never explained how the accused products kept the amplitude of light "constant." But even after the Court issued its construction—highlighting the issue for Oyster—Oyster still failed to explain how the accused products meet this limitation. It failed to do so despite the fact that it served its third set of infringement contentions after claim construction. In fact, these new contentions only included a conclusory statement on how this limitation is met under DOE, (*E.g.* Ex. 5, at 34–35); they did not explain how the "constant" requirement is met for literal infringement.

Now, however, Dallesasse asserts a new theory to support his conclusion that each product "group" literally satisfies this limitation. He contends that "keeping the amplitude . . . constant" allows for amplitude variation, so long as the amplitude is constant *some of the time*. (Ex. 6, at ¶¶ 197–200, 213).

Because Oyster failed to disclose its new "phase modulation" infringement theory, the Court should strike and exclude these portions of Dallesasse's Report (Ex. 6, at ¶¶ 197–200, 213, 229) and testimony.

14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### e. All Claims of the '327 Patent: Newly Analyzed Products

In addition to asserting previously undisclosed theories, Dallesasse's Report also addresses products that Oyster failed to analyze in its P.R. 3-1(c) claim charts. The only Coriant products Oyster even partially analyzed in its claim charts for the '327 patent were: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See, generally*, Ex. 5). Of these, Dallesasse analyzes only ▮▮▮▮▮▮▮▮ The Court should strike and exclude his analysis on the many products that Oyster failed to even mention (much less analyze) in its P.R. 3-1(c) claim charts.

This late disclosure prejudices Coriant. Indeed, Coriant focused its discovery efforts and defense preparation on the specific products Oyster referenced in its claim charts—not on the newly analyzed products, ▮▮▮▮▮▮▮▮▮▮▮▮. (*E.g.* Ex. 9 ▮▮▮▮▮▮▮▮▮▮ It is now, of course, too late for Coriant to seek additional third party discovery on such products.

That Oyster may have *named* these products in its P.R. 3-1(b) "disclosures," moreover, does nothing to cure this prejudice. *Cf. Anascape*, 2008 WL 7180756, at *3–*4 (striking invalidity expert's reliance on prior art reference that was "named among a long list of other references" in invalidity contentions but not charted). Again, "[Coriant] was not required to guess that [Oyster's] theory of infringement also included these additional, unnamed [products]." *Fujitsu*, 2013 WL 2300782, at *7. The Court should thus strike and exclude Dallesasse's analysis for these products.

## IV. CONCLUSION

For all of these reasons, Coriant requests that the Court enter an order striking portions of Dallesasse's Report and excluding his testimony.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Dated: February 26, 2018

Respectfully submitted,

/s/ *Thomas K. Pratt*
Melissa R. Smith
Texas Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
Fax: (903) 934-9257

Timothy C. Meece (IL SB No. 6226967)
tmeece@bannerwitcoff.com
J. Pieter van Es (IL SB No. 6210313)
pvanes@bannerwitcoff.com
Thomas K. Pratt (IL SB No. 6209761)
tpratt@bannerwitcoff.com
Timothy J. Rechtien (IL SB No. 6293623)
trechtien@bannerwitcoff.com
Michael J. Harris (IL SB No. 6280168)
mharris@bannerwitcoff.com
BANNER & WITCOFF, LTD.
10 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
Telephone: 312-463-5000

**ATTORNEYS FOR DEFENDANTS CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC AND CORIANT OPERATIONS, INC.**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## CERTIFICATE OF SERVICE

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served on February 26, 2018, with a copy of this document and the exhibits thereto via electronic mail.

/s/*Kurt C. Riester*

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on February 23, 2018, via telephone conference with the following participants: Amir Naini (Plaintiffs); and Tim Meece, Kurt Riester, and William Lamb (Defendants). No agreement could be reached, leaving an open issue for the court to resolve.

/s/*Kurt C. Riester*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that pursuant to Local Rule CV-5(a)(7)(B) that on May 18, 2017, the Court entered a Protective Order (Dkt. No. 95) authorizing the filing of documents designated pursuant to the Protective Order under seal.

/s/*Kurt C. Riester*