# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC, <br><br> Plaintiff, <br><br> v. | |
| CORIANT NORTH AMERICA, LLC et al., | No. 2:16-cv-1302-JRG-RSP <br> LEAD CASE |
| INFINERA CORPORATION, | No. 2:16-cv-1295-JRG-RSP |
| ALCATEL-LUCENT USA INC., | No. 2:16-cv-1297-JRG-RSP |
| FUJITSU NETWORK COMMUNICATION, INC., | No. 2:16-cv-1299-JRG-RSP |
| CISCO SYSTEMS, INC., | No. 2:16-cv-1301-JRG-RSP |
| HUAWEI TECHNOLOGIES CO., LTD. et al., <br><br> Defendants. | No. 2:16-cv-1303-JRG-RSP |

**PLAINTIFF OYSTER OPTICS, LLC'S OPPOSITION TO DEFENDANTS' MOTION FOR DISCOVERY SANCTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 37**

**REDACTED VERSION**

# **TABLE OF CONTENTS**

**PAGE**

I. DEFENDANTS CANNOT CARRY THEIR BURDEN OF JUSTIFYING *ANY* SANCTIONS, LET ALONE THE SEVERE SANCTIONS THEY SEEK ........................ 3

    A. Plaintiff Did Not Control Any of the Evidence at Issue and, In Fact, *First Became Aware it Existed At the Same Moment Defendants Did* .......................................... 3

    B. Even Third-Party OO Inc. Did Not Control the Valuation or Have Any Specific Recollection of It at Any Time During This Litigation .......................................... 5

    C. Defendants Concede that Plaintiff Has No Culpability Here ................................ 7

    D. The Evidence Proves That the Valuation and Notes are Irrelevant and, In Fact, *Refute* the Very Inferences Sought by Defendants .................................................. 8

    E. Any Conceivable Prejudice to Defendants Could Already Have Been Cured, if Defendants were Not Dead Set On Filing Their Meritless Motion ........................ 9

# **TABLE OF EXHIBITS**

Exhibit 1 contains:
- Timeline of Relevant Events

Exhibit 2 contains:
- Declaration of Isaac Foster

Exhibit 3 contains:
- Declaration of Jeffrey Ronaldi

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Elbit Sys. v. Hughes Network Sys.*,
 15-cv-00037, 2017 WL 2651618 (E.D. Tex. June 20, 2017) ............................................. 5

*Goh v. Baldor Elec. Co.*,
 No. 98-MC-064, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999)............................................. 7

*Imperium IP v. Samsung*,
 203 F.Supp.3d 755 (E.D. Tex. 2016).............................................................................. 10

*Jobe v. ATR Mktg., Inc.*,
 189 F.3d 466 (5th Cir. 1999) ......................................................................................... 3,7

*Rimkus Consulting Grp., Inc. v. Cammarata*,
 688 F.Supp.2d 598 (S.D. Tex. 2010) ........................................................................... 3,8,9

*Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) ....................................................................... 5

*Shell Global Sols. v. RMS Eng'g*,
 No. 09-cv-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011) ......................................... 7

*Smith v. Chrysler Group*, LLC,
 No. 15-CV-218, 2016 WL 7741735 (E.D. Tex. Aug. 31, 2016) ....................................... 7

*Traxcell Techs. v. Huawei Techs.*,
 17-cv-00042, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017) ............................................ 5

*U.S. v. Garrett*,
 238 F.3d 293 (5th Cir. 2000) ............................................................................................ 3

Defendants seek some of the severest of sanctions available by wrongly accusing Plaintiff of failing to produce information Plaintiff never possessed and learned about *at the same time as Defendants.* Defendants' claims relate to documents possessed by non-parties that Defendants knowingly conflate with Plaintiff. Defendants' Motion, based on these half-truths and full misstatements, should be squarely rejected.

Specifically, Defendants ask the Court to instruct the jury to draw various adverse inferences regarding the contents of the following documents in Defendants' favor:

(1) a valuation of the portfolio containing some of the patents-in-suit ("Portfolio") commissioned for tax purposes by non-party Oyster Optics, Inc. from non-party Andersen Tax LLC f/k/a WTAS LLC ("WTAS"), *after* Oyster Optics, Inc. had already sold the Portfolio for *more than six times* the amount in the valuation ("Valuation"); and

(2) handwritten notes in WTAS' internal file relating to the Valuation ("Notes").[1]

Defendants have no basis for their requests—or any sanctions at all. In fact, the record is one-sided and cuts against Defendants on the key facts.

<u>First</u>, it is undisputed Plaintiff ***never even knew*** of the Valuation and Notes, and never had possession, custody or control over them.  To be clear, Plaintiff, Oyster Optics **LLC** ("Plaintiff"), is separate and distinct from the entity that commissioned and received the Valuation and Notes, non-party Oyster Optics Inc. **(**"OO Inc."), with no overlap in management or operations. The Valuation and Notes were created ***after*** OO Inc. sold the Portfolio to unrelated third party TQ Gamma, which later sold the Portfolio to Plaintiff.  The only relationship between these entities came about months after Plaintiff bought the Portfolio from TQ Gamma, when OO Inc. acquired a 25% membership interest in Plaintiff in 2016. Ronaldi Decl. ¶ 1. Before this point, Plaintiff and OO Inc. had no connection or relationship whatsoever. The patent holder after OO Inc., TQ

---

[1] It is important to distinguish between the Valuation and the Notes, as ***no one but WTAS*** knew the Notes existed until WTAS produced them on January 29, 2018.

1

Gamma, never had the Valuation or Notes (which is not surprising given that OO Inc. commissioned the Valuation after having already sold the patents to TQ Gamma), and when TQ Gamma sold the Portfolio to Plaintiff, it did not give Plaintiff something it never had to begin with.

Second, even improperly treating Plaintiff and OO Inc. as one and the same, *there is no evidence* that even OO Inc. or its representative, Isaac Foster, had the Valuation during the course of this litigation or the years leading up to it, or had any specific recollection of it (and OO Inc. never would have had the Notes). Mr. Foster has made clear, during his deposition and in a sworn declaration attached to this Opposition, that he had neither. In other words, even under Defendants' improper blurring of facts and corporate distinctions, there was little to no information that non-party OO Inc. could have provided that it did not.

Third, and consistent with the above facts, Defendants have not even accused Plaintiff of acting in bad faith, a showing required for the relief they seek. To the contrary, Defendants *have conceded* that none of Plaintiff's witnesses or those of OO Inc. were ever dishonest in this discovery.

Fourth, since filing their motion, in which Defendants claimed the Valuation was a "linchpin" of their damages cases, several of Defendants' own expert witnesses have conceded that the Valuation is *entirely irrelevant* to a reasonable royalty estimate, and also that the Notes would not have been provided by WTAS to OO Inc. (and thus would never have been in the possession of OO Inc. or Plaintiff).

Fifth, Defendants had the opportunity to cure any purported prejudice they may have suffered, but instead chose to burden the Court with this meritless, hail-Mary motion.

The Court should therefore summarily deny Defendants' meritless and unsupported motion.

I. **DEFENDANTS CANNOT CARRY THEIR BURDEN OF JUSTIFYING *ANY* SANCTIONS, LET ALONE THE SEVERE SANCTIONS THEY SEEK**

Adverse instruction sanctions are among the most severe a court can administer. *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.Supp.2d 598, 614, 619 (S.D. Tex. 2010). A party seeking such sanctions based on undisclosed evidence bears the burden of showing **all** of the following: (1) the party to be sanctioned had "control over the evidence" and was obligated to produce it; (2) the party to be sanctioned had "a culpable state of mind"; (3) the evidence is relevant in that it would support the movant's claims or defenses; **and** (4) the nondisclosure is prejudicial. *Id.* at 616 (emphasis added); *see also Jobe v. ATR Mktg., Inc.*, 189 F.3d 466, *6 n.3 (5th Cir. 1999) (movant must "first show" that documents "were within the control of the opposing party").

Even where lesser sanctions, such as the monetary ones sought here, are at issue, the court must "carefully weigh" not just the prejudice to the movant, but the reasons why the disclosure was not made, the feasibility of curing the prejudice with a continuance or less severe sanctions, and any other relevant circumstances. *U.S. v. Garrett*, 238 F.3d 293, 298 (5th Cir. 2000).

Tellingly, Defendants fail to even mention, let alone attempt to carry their burden of proving, the majority of these essential factors, which, under controlling law, are necessary to obtain the sanctions they seek. Nor could they. The evidence on these essential factors is in Plaintiff's favor.

A. ***Plaintiff Did Not Control Any of the Evidence at Issue and, In Fact, First Became Aware it Existed At the Same Moment Defendants Did***

Defendants are not entitled to sanctions against Plaintiff, Plaintiff, because Plaintiff lacked any control over the Valuation and Notes, and also lacked control over the witness and documents leading to Defendants' discovery of the Valuation and Notes. In fact, contrary to Defendants' misleading suggestions to the contrary, it is undisputed that, Plaintiff itself did not possess ***or ever have prior knowledge*** of the Valuation or the Notes. Mot. at 3, 8; Ronaldi Decl. ¶ 2. This is not

3

surprising in light of the timeline of salient events on this critical and undisputed fact.[2] ***After*** selling the Portfolio to TQ Gamma, OO Inc. retained WTAS to prepare the Valuation "solely for tax planning and reporting." ANDERSEN016, 055-079; Foster Decl. ¶ 2. And while OO Inc. likely did receive the Valuation in 2011, it never received the Notes. Foster Decl. ¶ 4.[3] As such, TQ Gamma never got the Valuation or the Notes from OO Inc. And six years later, when TQ Gamma sold the Portfolio and transferred relevant documents to Plaintiff, Plaintiff, in turn, obviously never received the Valuation or the Notes. *Id.* at ¶ 5. Indeed, at the point in time when the transfer took place, Plaintiff had no preexisting relationship with OO Inc. There is also no dispute that only WTAS was aware of or possessed the Notes until WTAS produced them on January 29, 2018 pursuant to Defendants' subpoena. *Id.* at ¶ 4; Ronaldi Decl. ¶ 2.

Thus Plaintiff did not know of the existence of the Valuation or Notes during discovery, and had never seen these documents until they were produced by WTAS after the close of discovery.[4] It goes without saying that Plaintiff could not possibly have produced information that it never had, controlled, or was even previously aware of. *Smith, supra* at *4. To the contrary, Defendants conceded during the meet and confer process that they cannot even accuse Plaintiff of bad faith because they have ***no evidence of dishonesty*** on the part of the Plaintiff, any of Plaintiff's witnesses, Mr. Foster ***or any other witness***.

The cases Defendants cite do not support their position. Each case where sanctions were

---

[2] Because of the significance of the chronology of events, Plaintiff has also included a timeline with its exhibits to this Opposition.
[3] Even Defendants' damages experts, based on their extensive experience with such valuations, admitted that such internal handwritten notes would not have been provided to OO Inc. *See, e.g.,* Becker Rough Tr. 99:2-6; Davis Rough Tr. 43:21-23.
[4] When Defendants did subpoena WTAS after the close of discovery, WTAS asked Oyster if it planned to move to quash or otherwise object to its production of the documents. Plaintiff immediately wrote WTAS and said it would not object—and only requested that WTAS also provide Plaintiff with a copy of any production.

4

imposed involved ***knowing failures*** to disclose information in the possession or control ***of the sanctioned party***. As such, these cases obviously are factually distinguishable and, in fact, legally supportive of Plaintiff's position. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752 (1980) (party never answered interrogatories even after court ordered it to do so); *Traxcell Techs. v. Huawei Techs.*, 17-cv-00042, 2017 WL 6559256 (E.D. Tex. Dec. 21, 2017) (party served unintelligible and overbroad infringement contentions and attempted to reassert withdrawn claims without leave); *Elbit Sys. v. Hughes Network Sys.*, LLC, 15-cv-00037, 2017 WL 2651618, *10 (E.D. Tex. June 20, 2017) (party knew of but waited 4 months and until 9 days before close of discovery to supplement interrogatory to disclose earlier priority date).

### B. Even Third-Party OO Inc. Did Not Control the Valuation or Have Any Specific Recollection of It at Any Time During This Litigation

Just like Defendants, Plaintiff first learned of the existence of the Valuation during the December 2017 deposition of Isaac Foster, a non-party who is the CFO of OO Inc. Ronaldi Decl. ¶ 2. And notwithstanding Defendants' insinuations to the contrary, OO Inc. witnesses testified they had no recollection of any valuation of the patents in suit. Even Mr. Foster as an individual had no control or independent recollection of the Valuation, or that it concerned the patents-in-suit. Foster Decl. ¶¶ 2-3. At his deposition, Mr. Foster was shown two spreadsheets that he had located on one of his old ***personal*** laptops and produced in response to a subpoena that Defendants directed at him in his ***personal*** capacity. *Id.* These spreadsheets contain entries referencing a "valuation" in the amount of $330,000 in connection with OO Inc.'s "C Corp Conversion Tax Liability," and a payment to "WTAS Valuation Services Group."

Even with these spreadsheet entries before him to refresh his recollection, Mr. Foster testified that he did not recall what the "valuation" was about, other than that it related to tax issues. Mr. Foster specifically stated that he did not recall if the "valuation" concerned patents. His

5

testimony on this issue, which Defendants conspicuously omit from their Motion, was as follows:



Mr. Foster also testified that he assumed WTAS would have generated a written report and that he assumed he would have received a copy if it had. *Id.* at 224:24-225:2.

Other critical facts about OO Inc.'s knowledge and possession of the Valuation are also fatal to Defendants' Motion. For instance, Mr. Foster does not now have a copy of this Valuation from 2011—and has not had it during the course of this litigation. Foster Decl. ¶ 4. And there is no evidence that anyone else at OO Inc. ever received or even knew about the Valuation. *Id.*[5] Thus, even under Defendants' improper blurring of facts and corporate distinctions, there was little to no information that OO Inc. could have provided that it did not.

At bottom, the crux of Defendants' motion is that Plaintiff should be sanctioned merely because Mr. Foster of OO Inc. knew of the Valuation at one point, some 6 years ago. Mot. at 6. But even assuming Mr. Foster and OO Inc. could somehow be said to have fallen short on their

---

[5] OO Inc. largely ceased operations years before Plaintiff purchased the Portfolio. Foster Decl. ¶ 4.

6

obligations as non-parties in responding to Defendants' discovery demands, this would not warrant sanctions against *Plaintiff* absent a showing that Plaintiff had control over OO Inc. Defendants do not even attempt to demonstrate that such control existed. Instead, they assert that OO Inc. is "subject to the Court's orders as a party" solely because it is a 25% member of Plaintiff, which is a manager-managed LLC. Mot. at 3. Defendants cite no authority for the proposition that any LLC member is subject to discovery in a lawsuit involving the LLC as though it were a party without being named as such, because there is none. Indeed, that Defendants subpoenaed OO Inc. and Mr. Foster demonstrates that Defendants regarded them to be non-parties. Defendants also nowhere explain why OO Inc. being subject to discovery as if *it* were a party means *Plaintiff* should be sanctioned for the imagined nondisclosures of OO Inc. and its CFO.

In any event, regardless of what Defendants are trying to suggest by stating that OO Inc. holds a passive minority interest in Plaintiff, the law is clear that Plaintiff has no obligation to produce—and thus cannot be sanctioned for nondisclosure of—information that Defendants have not shown Plaintiff had any legal right or practical ability to obtain. *Shell Global Sols. (US) Inc. v. RMS Eng'g*, No. 09-cv-3778, 2011 WL 3418396 (S.D. Tex. Aug. 3, 2011); *Goh v. Baldor Elec. Co.*, No. 98-MC-064, 1999 WL 20943 (N.D. Tex. Jan. 13, 1999).

### C. Defendants Concede that Plaintiff Has No Culpability Here

With respect to the culpability requirement, the movant "must show bad faith" on the part of the party to be sanctioned. *Jobe*, 189 F.3d at *6 n.3. "Bad faith" in this context means "conduct involving 'fraudulent intent and a desire to suppress the truth.'" *Smith v. Chrysler Group*, LLC, No. 15-CV-218, 2016 WL 7741735, *4 (E.D. Tex. Aug. 31, 2016).

Defendants do not even attempt to clear this hurdle. Neither the term "bad faith" nor any of its synonyms appear anywhere in Defendants' Motion. To the contrary, Defendants have *conceded* that no Plaintiff or OO Inc. witness has ever been dishonest. Mot. at 6-8. At the most,

7

Defendants accuse Plaintiff of a lack of diligence. Mot. 6-8. The absence of bad faith is fatal to Defendants' request for adverse inference sanctions. *Smith, supra* at *4. And because Plaintiff cannot even be shown to have lacked diligence by failing to disclose information it had no ability or obligation to disclose, lesser sanctions are not warranted either.

### D. The Evidence Proves That the Valuation and Notes are Irrelevant and, In Fact, *Refute* the Very Inferences Sought by Defendants

Defendants must also show that the evidence is relevant and supports the inferences sought. This serves as "an important check" on sanctions motions, and "speculative or generalized assertions" about the favorable nature of the evidence are insufficient. *Rimkus* 688 F.Supp.2d 598 at 616.

No amount of relevance can serve as a substitute for Defendants' utter failure to show the control or culpability required for the type of relief they seek. But, unable to articulate ***any*** discovery failure on the part of Plaintiff or OO Inc., Defendants resort to grossly overstating the importance of the Valuation and the Notes. A more complete record than that presented by Defendants makes clear that the Valuation is entirely irrelevant. It also makes clear that the Notes were, at best, of marginal relevance ***and never provided to OO Inc. or Plaintiff***.

Indeed, Defendants only contend that the Valuation is relevant to one issue: damages. But their own damages experts make little or no use of the Valuation, with one expert stating [REDACTED] Bakewell Rough Tr. 184:18-185:3. This is not surprising. The parties to the hypothetical negotiation would know that the Valuation's conclusion of a $330,000 FMV had already been proven grossly incorrect the moment it was issued on December 15, 2011, as the Portfolio had been sold to TQ Gamma on November 4, 2011 ***for over 6 times this amount***: $2 million and a share of future revenue. The parties to the hypothetical negotiation would

8

also know that the Valuation was *never* relevant for any purpose other than OO Inc.'s tax reporting; the Valuation and accompanying cover letter and "Statement of Limiting Conditions" explicitly state that the Valuation was only to be used for tax reporting purposes, and that ███████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████ ANDERSEN016-18.

Defendants also misrepresent that the "bases for [WTAS'] conclusions" that the Portfolio's FMV as of January 1, 2010 was $330,000 is that "the two agreements that are the centerpiece of Plaintiff's damages theory are unreliable as mere 'nuisance' value settlements." Mot. at 9. In fact, neither these agreements, nor any characterization of these agreements, played any role in the calculation of the $330,000. The Valuation states that the $330,000 FMV was derived using the "Cost Approach," which measures the value of an asset based on its replacement cost. ANDERSEN030-37. The largest of WTAS' inputs – $174,179 – was for patent filing costs, and the remaining inputs were for technology development costs and administrative overhead. *Id.* It therefore comes as no surprise that the word "nuisance" is absent from the body of the Valuation.

The sole mention of "nuisance" in the WTAS production is in the statement, "Revs of $45k in 2008 related to a nuisance suit," in the Notes, which, as explained above, Mr. Foster *would never have seen or received*. ANDERSEN136. Also, in spite of Defendants' desire to attribute this "nuisance" characterization to Mr. Foster at OO Inc., there is no evidence to show that it originated from Mr. Foster.

### E. Any Conceivable Prejudice to Defendants Could Already Have Been Cured, if Defendants were Not Dead Set On Filing Their Meritless Motion

Defendants must also establish that they have suffered prejudice. *Rimkus*, 688 F.Supp.2d at 618. Here, Defendants' claims of prejudice ring hollow in view of their failure to diligently

9

pursue the Valuation, or the additional depositions they claim they needed to explore OO Inc.'s representations to WTAS and ensure the admissibility of the Valuation and Notes. Defendants waited until January 12, 2018 to subpoena WTAS despite having known of the Valuation as of Mr. Foster's deposition two weeks earlier. Defendants then waited yet another two weeks to bring the instant motion. Meanwhile, all 7 damages experts in this case were able to address the Valuation in their reports, without complaint that they lacked sufficient information or time to do so.

Defendants also exaggerate the alleged barriers to obtaining the discovery they desire now. As Dr. Becker testified, it is apparent from the WTAS production that WTAS' "primary, if not exclusive source of information for [its information gathering for the Valuation] was Isaac Foster." Becker Rough Tr. 96:16-22. Yet, Defendants *refused* an offer to reopen Mr. Foster's deposition, opting to file their meritless motion instead. And WTAS' website confirms that the only 2 WTAS employees whose names appear on the Valuation are still employed by it. Defendants cannot establish prejudice simply by clamoring it is "too late" without offering any reason why they could not already have deposed, and cannot now depose, these witnesses about the Valuation with trial still over 3 months out. And Defendants could have included, but did not include, a request for deposition in the subpoena to WTAS, which Plaintiff did not oppose.[6]

Dated: February 27, 2018                    Respectfully submitted,

                                            By: /s/ Reza Mirzaie
                                            Marc A. Fenster (CA SBN 181067)
                                            E-mail: mfenster@raklaw.com
                                            Reza Mirzaie (CA SBN 246953)

---

[6] *Imperium IP v. Samsung*, 203 F.Supp.3d 755 (E.D. Tex. 2016) is inapposite as it is not a discovery case and prejudice was found because a known defense was not raised until 8 weeks after dispositive motions were due and 4 months before trial.

10

E-mail: rmirzaie@raklaw.com
Amir A. Naini (CA SBN 226627
Email: anaini@raklaw.com
Neil A. Rubin, CA SBN 250761
Email: nrubin@raklaw.com
Arka Chatterjee (CA SBN 268546)
E-mail: achatterjee@raklaw.com
Stanley H. Thompson, Jr. (CA SBN No. 198825)
Email: sthompson@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile: 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
Andrea L. Fair (TX SBN 24078488)
E-mail: andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 13231
Longview, Texas 75601
Tele: 903/757-6400
Facsimile 903/757-232

**Attorneys for Plaintiff Oyster Optics, LLC**

11

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that Defendants' Motion for Sanctions is authorized to be filed under seal by the Protective Order, Dkt. No. 95, entered in Civil Action No. 2:16-cv-1302.

*By: /s/ Reza Mirzaie*
Reza Mirzaie
ATTORNEY FOR PLAINTIFF
OYSTER OPTICS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service on this the 27th of February, 2018.

*By: /s/ Reza Mirzaie*
Reza Mirzaie
ATTORNEY FOR PLAINTIFF
OYSTER OPTICS, LLC