**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| OYSTER OPTICS, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>CORIANT (USA) INC., CORIANT NORTH AMERICA, LLC, CORIANT OPERATIONS, INC.,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 2:16-CV-01302-JRG |

**ORDER ON MOTIONS TO COMPEL AND MOTION FOR SANCTIONS**

On March 8, 2018, the Court held a hearing on Plaintiff's Motion to Compel Defendant Infinera Corporation ("Infinera") (Dkt. No. 206), Plaintiff's Motion to Compel Cisco Systems Inc. ("Cisco") (Dkt. No. 205), and Defendants' Motion for Discovery Sanctions under Fed. R. Civ. P. 37 (Dkt. No. 241). Having heard argument from all interested Parties on the motions the Court finds and holds as follows:

## I. Plaintiff's Motion to Compel Defendant Infinera

Plaintiff represented and Defendant Infinera agreed on the record in open court that Plaintiff had agreed to withdraw its Motion to Compel Defendant Infinera. Accordingly, the Motion (Dkt. No. 206) is hereby **ORDERED WITHDRAWN**.

## II. Plaintiff's Motion to Compel Cisco

The Court heard argument regarding Plaintiff Oyster Optics LLC's ("Oyster") Motion to Compel Cisco. (Dkt. No. 205). In short, Plaintiff argues that Cisco should be compelled "to make narrowly tailored productions of financial information concerning products that Oyster alleges

infringe its patents," specifically "revenue information for CFP2 modules . . . and for related products that are not useable without them." (Dkt. No. 205 at 1). The central issue in dispute between the Parties is whether these CFP2 modules and the related products for which Oyster seeks discovery of financial information are properly in the case.

The Parties do not dispute that Oyster clearly identified the products in its complaint. (*See e.g.*, 2:16-cv-1301, Dkt. 1 ¶¶ 72 ("the Accused Instrumentalities designed in accordance with the OIF CFP2 ACO Standard contain a transmitter (Tx Coherent Optics) with a laser, a modulator, and a driver which is configured to receive input data and control the modulator to generate a first optical signal as a function of the input data."), 87 ("On information and belief, the 100G Accused Instrumentalities are also designed in accordance with the OIF CFP2 ACO Standard.")).

The Parties also agree that if the Accused Instrumentalities properly in the case include products designed in accordance with the OIF CFP2 ACO Standard, then Cisco is obligated to produce the financial information sought by Oyster. (Hearing Tr. 16:7–13 (Court: "[I]f they've been disclosed and claimed, I think you're going to have to produce this spreadsheet." Mr. Gaudet: "I tell you what, Your Honor, we agree completely.").

However, the Parties dispute whether the CFP2 products remain in the case. Plaintiff argues that they were properly plead and were clearly identified in the Infringement Contentions. Cisco argues that the Plaintiff abandoned these previously identified CFP2 products, effectively removing them from the case when it elected to not include them in its Infringement Contentions.

The Court has reviewed the Infringement Contentions (Dkt. No. 254 Ex. 1). The Court notes that the Accused Products are listed, generally, at the beginning to the Infringement Contentions contained in Exhibits A through G, as follows:

> Oyster asserts that the Asserted Claims are infringed by the various systems, apparatuses, services, and methods made, used, sold, offered for sale, imported, or

> supplied by Defendant related to fiber optic data transmission, including but not limited to, the and the ONS 15454 100-Gbps CP-DQPSK Full C-Band Tunable DWDM Trunk Card, ONS 15454 40Gbps CP-DQPSK Full C-Band Tuneable Transponder Card, NCS 2000 200-Gbps Multirate DWDM Line Card, and NCS 2000 100-Gbps DWDM Line Card with Soft Decision FEC products, as well as the compatible chassis in which they are installed, including, without limitation, the CRS-1, CRS-3, and CRS-X, ONS 15454 Series Multiservice Transport Platform, and Network Convergence Systems chassis ("Cisco Accused Instrumentalities").

(*Id*. at 2–3). The Court does not find, and Plaintiff did not argue, that there is any mention of the CFP2 products among the general characterization of the Accused instrumentalities.[1]

The Plaintiff, during argument, directed the Court to various parts of its Infringement Contentions where the OIF-DPC-MRX Standard and the OIF-CFP-ACO Standard are mentioned. The Court has reviewed these portions of the infringement contentions to which the Plaintiff directed the Court during its argument. The Court concludes that such references to the standards alone are insufficient to meet the requirements of P.R. 3-1 which requires a plaintiff identify "each accused apparatus, product, device, process, method, act or other instrumentality" "as specific[ally] as possible." This level of specificity is not met by Plaintiff's mere reference to standards. This, if deemed adequate, would require a defendant to ascertain which precise products are covered by the standard and, essentially infer the specific identity of accused instrumentality. Indeed, P.R. 3-1 requires the Plaintiff to identify the accused instrumentalities "by name or model number, if known." Plaintiff could have done this, but it did not. When they did not, Defendants acted reasonably in assuming such products were no longer in the case.

---

[1] A similar general characterization of the accused instrumentalities appears at the beginning of Exhibit G. Again, no mention of the OIF CFP2 ACO Standard Instrumentalities is included.

The Court finds that Oyster effectively removed the CFP2 products from the case by not including adequately disclosing specifically in their infringement contentions. Categorical disclosure alone is insufficient when precise disclosure is mandated under P.R. 3-1. Accordingly, the Court **DENIES** Plaintiff's Motion to Compel Cisco (Dkt. No. 205).

**III. Defendants' Motion for Discovery Sanctions under Rule 37**

The Court also heard argument on Defendants' Motion for Discovery Sanctions under Fed. R. Civ. P. 37. (Dkt. No. 241). In short, Defendants seek a curative jury instruction and various evidentiary findings imposed by the Court to address an alleged prejudice arising from the late disclosure of an existing valuation report as to the asserted patent portfolio. Plaintiff argues that not only was the valuation in question not within the control of Oyster, its production, albeit late, was the result of extreme efforts by Plaintiff which exceeded the requirement of ordinary due diligence. Plaintiff also argues that the valuation is only marginally relevant, if at all, and, as a result, the Defendants have not been materially prejudiced.

Briefly, the Court is persuaded that the facts underlying this Motion are as follows:

- Over the course of fact discovery, Defendants sought information on whether Oyster had ever made or had caused to be made a valuation of the patents-in-suit or related patents on multiple occasions, through interrogatories, emails, and meet-and-confers. Oyster consistently denied any knowledge of such a valuation. (*See*, generally, Dkt. No. 241 at 2–3).
- Defendants served subpoenas on Oyster Inc. seeking the same information. Oyster Inc. is a 25% non-managing member of Oyster (the LLC). Oyster Inc. is comprised of five shareholders. There is some overlap between the

shareholders of Oyster Inc. and the managing members of Oyster. Oyster Inc., like Oyster, did not produce any valuation or any information relating to the existence of a valuation. (*Id*. at 3–4).

- Defendants deposed Mr. Seth Page, CEO of Oyster Inc. on the last day of fact discovery. During this deposition, it came to light that there was a "box" of potentially relevant documents that did not appear to have been produced. Following this discovery, a new round of searching was requested by the Defendants, including information relating to any valuation of Oyster's technology, and Plaintiff's counsel produced a spreadsheet with a line item entitled "Valuation" with a corresponding entry of $330,000. (*Id*. at 4).
- Following continued discovery, after the close of fact discovery, it was revealed that WTAS Valuation Services Group was previously retained by Oyster Inc. to produce a valuation. Mr. Isaac Foster, CFO of Oyster Inc., who's deposition was being taken during the production of this information, was asked about the valuation discussed in the produced documents. Mr. Foster confirmed that WTAS Valuation Services would have generated a written valuation and that he would have received a copy. (*Id*. at 5).
- Defendants served a subpoena on WTAS seeking the valuation. Oyster did not seek to quash the subpoena and WTAS produced its valuation which concluded for tax purposes, as of January 1, 2010, the Oyster Inc. patent portfolio had a fair market value of $330,000. Along with the eight year old valuation, WTAS also produced handwritten notes ("the Notes"), allegedly based on a phone call between WTAS and Mr. Foster. (*Id*. at 6).

- The Notes, which refer to settlements used to support the valuation result as recoveries based on "nuisance" value, appear to be the core of the dispute between these parties.

The Plaintiff has previously offered, and offered again during the hearing, to agree (with the Court's approval) to reopen discovery for the purpose of Defendants taking depositions of Mr. Foster and a representative of WTAS on issues surrounding the valuation and Notes. (Hearing Tr. 3/8/18 at 60:17–24 ("THE COURT: Have you offered to provide depositions? MR. MIRZAIE: Absolutely, Your Honor. So we got Foster, the third party who agreed to open up his depo, our client will open up his depo, and we've offered that, and even WTAS, we have no control over them, but there's no evidence that they would refuse a depo. They took on the document subpoena."). Defendants have not accepted such offer, and appear more focused on securing sanctions rather than mitigating the prejudice upon which their sanctions motion is based.

Additionally of note is the fact that the Defendants experts have already been able to examine and comment on the valuation. (*Id*. at 44:13–18 ("THE COURT: Did you get them and did your experts address them in the rebuttal reports? MR. JAMESON: Our expert -- yes, Your Honor, our expert have -- have provided comments on [] the valuation, yes."). It is apparent that this examination and comment is not likely to be as complete or thorough as it would be had the WTAS valuation been produced earlier in time.

This level of prejudice does not, however, seem to the Court to be incurable. Indeed, coupled with Plaintiff's willingness to reopen discovery for the purpose of deposing Mr. Foster and/or WTAS, the Court believes that such prejudice can be effectively remedied by the Defendants.

The Court does not find that there is any manifest bad faith on the part of the Plaintiff. The Court does believe that Defendants have raised questions regarding why this valuation document was not clearly recalled or turned over during ordinary discovery. Paired with the other discovery issues discussed by the Defendants in their Motion, (*see*, Dkt. No. 241 at 7 ("this is not the only time that Plaintiff has made a post-discovery production of documents it had previously stated did not exist.")), the Court reminds all Parties that there are potential consequences stemming from litigation conduct that is, or becomes, exceptional.

On the whole, the Court finds that the Defendants' Motion for Discovery Sanctions should be, and hereby is, **DENIED** as to the requested relief. However, the Court **ORDERS** the following remedial actions be undertaken forthwith:

a. Discovery related solely to the issue of the WTAS valuation is hereby **REOPENED** for the additional steps set forth below;

b. The Plaintiff will make Mr. Foster available for deposition by the Defendants, who may depose him for up to four (4) hours limited topically to such valuation;

c. The Defendants are permitted to take the deposition from a representative of WTAS relating to the WTAS valuation and the Notes. Such deposition shall not exceed four (4) hours in duration and is limited typically to such valuation;

d. The Defendants' experts will be permitted to supplement their reports in regard to such valuation following completion of this targeted discovery,

with such supplementation being completed and served within ten (10) days of the completion of the last such deposition;

e. The Plaintiff **SHALL REIMBURSE** Defendants for the reasonable and necessary costs associated with such depositions, but not to exceed $5,000; and,

f. Plaintiff will reasonably cooperate to assist in promptly facilitating such targeted discovery. Plaintiff and Defendants will undertake more consistent and effective efforts, hereafter, to meet, confer, and communicate in a renewed effort to avoid and resolve disputes throughout the remainder of this case.

**So ORDERED and SIGNED this 12th day of March, 2018.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE