FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC<br><br>    Plaintiff,<br><br>vs.<br><br>CORIANT NORTH AMERICA, LLC, et al.,<br><br>    Defendants. | Case No. 2:16-CV-01302-JRG<br>(Lead Case) |
| CISCO SYSTEMS, INC.,<br><br>    Defendant. | Case No. 2:16-cv-01301-JRG<br>(Consolidated Case) |

**DEFENDANT CISCO SYSTEMS, INC.'S MOTIONS IN LIMINE**

**TABLE OF CONTENTS**

                                                                                         **Page**

I.      INTRODUCTION .................................................................................................. 1

         A.      Motion in Limine No. 1 (Common): Oyster may not introduce evidence or argument disclosing any Cisco's stock value, market value, total sales, sales by segment, past annual revenue, past annual revenue from the sales of the accused product(s), estimated future annual revenue, sales figures for sales outside of the U.S., or overall capital expenditures. Similarly, Oyster may not argue through a demonstrative or otherwise that the royalty rate it seeks is only a "fraction," "small percentage," etc., of any Cisco's overall revenues. ................................................................................... 1

         B.      Motion in Limine No. 2 (Common): The parties shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the court has the power to dismiss frivolous suits and/or frivolous counterclaims. .................................................................................... 2

         C.      Motion in Limine No. 3 (Common): The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, inter partes review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements "made to the Patent Office," without identifying the existence of IPR proceedings. ............................ 3

         D.      Motion in Limine No. 4 (Common): The parties shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding the fact that testimony or opinions offered by any expert may have been excluded or found to be unreliable in any other lawsuits. ........................................................................................................... 4

         E.      Motion in Limine No. 5: Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the '327 Patent contains disclosures or written description otherwise present only in other patents ............................................................................................ 5

         F.      Motion in Limine No. 6: Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding Cisco's license with ███████, including Ex. 2 to the Deposition of Cisco's 30(b)(6) witness, Dan Lang ............................................... 6

         G.      Motion in Limine No. 7: Oyster may not raise any argument, evidence, testimony, insinuation, reference, or assertion regarding the licenses to the

'500 Patent with ███████████, including that such licenses are comparable to a license that Cisco would have entered into with respect to the '327 Patent. ........................................................................................... 8

II. CONCLUSION ................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285
 (Fed. Cir. 2014)..................................................................................................6

*Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2607882
 (E.D. Tex. May 25, 2017)..................................................................................9

*BMC Software, Inc. v. ServiceNow, Inc.*, No. 14-CV-903-JRG, 2016 WL 379620
 (E.D. Tex. Feb. 1, 2016)....................................................................................2

*ContentGuard Holdings v. Amazon.com*, Nos. 2:13-CV-01112-JRG,
 2:14-CV-00061-JRG, 2015 WL 11089490 (E.D. Tex. Sep. 3, 2015) ................2

*Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273,
 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010)..................................................10

*Flexuspine, Inc. v. Globus Medical, Inc.*, Case No. 6:15-cv-201-JRG-KNM,
 2016 WL 9282314 (E.D. Tex. Aug. 5, 2016)....................................................4

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, Case No. 2:16-cv-00052-JRG-RSP,
 Order at 11 (Dkt. No. 440) (E.D. Tex. Sept. 29, 2017) ............................. 1, 3-4

*Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-00080-JRG (E.D. Tex.)..............................1

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d. 51 (Fed. Cir. 2012) ........1, 9

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ....................... 8-9

*Promethean Insulation Tech. v. Sealed Air Corp.*, No. 2:13-cv-1113,
 2015 WL 11027036 (E.D. Tex. Aug. 14, 2015) ................................................2

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 2:13-cv-213-JRG-RSP
 (E.D. Tex.) .........................................................................................................4

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010).............................8, 10

*Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794
 (E.D. Tex. 2007)...............................................................................................10

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. CV 12-1013-RGA,
 2015 WL 456154 (D. Del. Jan. 30, 2015)........................................................11

*St. Laurence Commc'ns LLC v. Motorola Mobility LLC*, 2:15-cv-349-JRG
 (E.D. Tex.) .........................................................................................................5

*Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, 2010 WL 774878
   (E.D. Tex. March 2, 2010) ..................................................................................8

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ............................8

*Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671 (Fed. Cir. 2015) ...........6

**<u>Statutes</u>**

35 U.S.C. § 112 ...................................................................................................................6

**<u>Other Authorities</u>**

Fed. R. Civ. P. 30(b)(6) ......................................................................................................6

Fed. R. Evid. 702 ................................................................................................................8

Fed. R. Evid. 401, 402 and 403 ........................................................2, 3, 4, 6, 7, 10, 12

**I.     INTRODUCTION**

For the reasons set forth below, Defendant Cisco Systems, Inc. asks the Court to exclude the following evidence and arguments.

**A.     Motion in Limine No. 1 (Common[1]): Oyster may not introduce evidence or argument disclosing any Cisco's stock value, market value, total sales, sales by segment, past annual revenue, past annual revenue from the sales of the accused product(s), estimated future annual revenue, sales figures for sales outside of the U.S., or overall capital expenditures. Similarly, Oyster may not argue through a demonstrative or otherwise that the royalty rate it seeks is only a "fraction," "small percentage," etc., of any Cisco's overall revenues.**

Oyster should be precluded from offering any argument or evidence about, or otherwise making any reference to, Cisco's total revenues, total cash flow, total profits, stock value, market value, total sales, sales by segment, past annual revenue, annual revenue from the sales of unaccused or no longer accused product(s), estimated future annual revenue, sales figures for sales outside of the U.S., or overall capital expenditures. *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d. 51, 67-68 (Fed. Cir. 2012). Similarly, Oyster should not be permitted to argue, through a demonstrative or otherwise, that the royalty rate it seeks is only a fraction, small percentage, etc., of Cisco's overall revenue, or otherwise compare the proposed royalty rate to any revenue other than Oyster's damages expert's estimation of Cisco's revenue for the accused products. *Id.*; *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, Case No. 2:16-cv-00052-JRG-RSP, Dkt. No. 440, at 11 (E.D. Tex. Sept. 29, 2017); *Implicit, LLC v. Trend Micro, Inc.*, 6:16-cv-00080-JRG, Dkt. No. 253, at 6 (E.D. Tex.) (ordering that "Neither party may reference Trend's size, profits, or total value without obtaining leave from the Court."). Oyster must "structure its damages presentation in such a way that the jury will not be able to calculate

---

[1] Motions identified as "(Common)" seek substantially similar relief to motions being filed by other defendants. However, due to case-specific facts, although the requested relief is similar, the underlying factual bases may be different.

[Cisco's] total revenues … ."  *BMC Software, Inc. v. ServiceNow, Inc.*, No. 2:14-cv-903-JRG, 2016 WL 379620, at *3 (E.D. Tex. Feb. 1, 2016).

Likewise, Oyster should be precluded under FRE 401, 402, and/or 403 from introducing other large financial figures, such as Cisco's market capitalization or capital expenditures, that would only confuse the jury and skew the damages horizon.  *See ContentGuard Holdings v. Amazon.com*, Nos. 2:13-cv-01112-JRG, 2:14-cv-00061-JRG, 2015 WL 11089490, at *5 (E.D. Tex. Sep. 3, 2015) ("ContentGuard is precluded from introducing any evidence or argument regarding Samsung'[s] size, market capitalization, or revenues and profits not derived from the accused products or services."); *Promethean Insulation Tech. v. Sealed Air Corp.*, No. 2:13-cv-1113, 2015 WL 11027036, at *3-6 (E.D. Tex. Aug. 14, 2015) (excluding "testimony (including expert opinion), evidence, or argument regarding the total sales data, total revenues, size, or financial worth of Defendants or their affiliates … , including comparing that information to corresponding information from Plaintiff … except as to revenue from accused products.").

**B.     Motion in Limine No. 2 (Common):  The parties shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the court has the power to dismiss frivolous suits and/or frivolous counterclaims.**

The parties should be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the court has the power to dismiss frivolous suits and/or frivolous counterclaims and implying or explicitly stating that the claims are not frivolous because they are being tried.  This exclusion is necessary to prevent juror confusion and waste time under FRE 403 and because the facts underlying such an argument are irrelevant under FRE 402.  For example, an assertion by Oyster that its claims necessarily have merit because, if they did not, the Court would have dismissed them already, would require Cisco to engage in a multi-pronged rebuttal describing the standards governing motions to dismiss, motions for summary

judgment, and the like. This type of evidence and argument is irrelevant, would only lengthen the trial, and waste time. Accordingly, such argument and testimony should be excluded pursuant to FRE 401, 402, and 403.

> **C. Motion in Limine No. 3 (Common): The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, inter partes review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements "made to the Patent Office," without identifying the existence of IPR proceedings.**

The Defendants have filed several Petitions for Inter Partes Review of Oyster's various patents. Some of those Petitions have been instituted, some have not, and others remain pending. The PTAB has rendered no final decision in relation to any of the Petitions. In accordance with this Court's past practice, Cisco moves to preclude any party from mentioning the existence or institution outcome of any Petition; however, Cisco understand that statements made by the parties themselves may be used to the extent admissible. *See Huawei*, Case No. 2:16-cv-00052-JRG-RSP, Dkt. No. 440, at 2-3 ("The parties are precluded from presenting evidence or argument regarding the petition for, or outcome of, inter partes review (IPR) proceedings, including any decisions to institute or not institute review. The parties are not precluded from presenting evidence or argument regarding statements made by the parties to the Patent Trial and Appeal Board (PTAB) in IPR proceedings to the extent the statements are admissible under the Federal Rules of Evidence. The parties shall refer to any such statements as statements 'made to the Patent Office,' without identifying the existence of IPR proceedings."). In the event that a party's statement to the PTAB is admissible, Cisco requests that the parties be limited to referring to such statements as statements "made to the Patent Office" without identifying the existence of the IPR. *Id.*

**D. Motion in Limine No. 4 (Common): The parties shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding the fact that testimony or opinions offered by any expert may have been excluded or found to be unreliable in any other lawsuits.**

Any argument, evidence, testimony, insinuation, reference, or assertion attempting to elicit testimony regarding the fact that testimony or opinions offered by a party's expert may have been excluded or found to be unreliable in any other lawsuits should not be permitted at trial.

For example, during the deposition of Cisco's damages expert, Dr. Stephen Becker, Oyster spent a lengthy period of time questioning Dr. Becker regarding the portions of his opinions in another case that had been excluded. *See Flexuspine, Inc. v. Globus Med., Inc.*, Case No. 6:15-cv-201-JRG-KNM, 2016 WL 9282314 (E.D. Tex. Aug. 5, 2016). The issues *Flexuspine*—or any other case—do not implicate the accused devices in this case or the Patents-in-Suit, and were specific to the facts and circumstances of that case. In particular, the issue there was whether a jury verdict in another matter was sufficiently comparable to be applied to the hypothetical negotiation. But whether a jury verdict can be applied to the hypothetical negotiation of an unrelated group of parties is far removed from any issue in dispute here. Accordingly, Dr. Becker's prior testimony—and any other opinions previously offered by each of the parties' experts—is entirely unrelated to the dispute at hand and are not probative of any fact at issue in this case. Such prior cases and exclusions are inadmissible as irrelevant under FRE 402. Similarly, because they risk unfairly prejudicing the jury, the opinions are also inadmissible under FRE 403. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, Case No. 2:13-cv-213-JRG-RSP, Dkt. No. 248, at 4 (E.D. Tex. Jan. 31, 2015) (Pl.'s Motions in Limine No. 10). Indeed, were such testimony to be introduced, there would be substantial risk for a "mini trial" in which a party would be required to discuss the particular facts and

circumstances of that case and explain why this case is different. This would needlessly waste time and only serve to confuse the jury as to the issues presently in dispute.

To be clear, this *limine* is not intended to and would not prevent a party from referencing the fact that an expert has testified in other matters, nor would it prevent references to how long an expert has served in the capacity as an expert. If a party offers evidence of an expert having been accepted by other courts or touts the number of times an expert has testified, that may open the door for the opposing party to use prior judicial opinions pertaining to that prior expert testimony. General testimony from an expert that an expert has testified as an expert in the past or has testified on behalf of plaintiffs and defendants in patent cases would not open the door. *See* Order on Motions In Limine, *St. Lawrence Commc'ns LLC v. Motorola Mobility LLC*, Case No. 2:15-cv-349-JRG, Dkt. No. 458, at 4 (E.D. Tex. Mar. 2, 2017) (SLC's Unopposed MIL No. 2).

**E. Motion in Limine No. 5: Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the '327 Patent contains disclosures or written description otherwise present only in other patents**

Oyster should be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that the '327 Patent contains disclosures present only in other, unasserted (or withdrawn) patents in its patent portfolio. For example, Cisco expects Oyster to rely on testimony from its invalidity expert, Dr. Lebby, and the inventor, Peter "Rocky" Snawerdt, regarding the teaching of phase modulation in other patents to argue that the '327 Patent adequately discloses how to do phase modulation. Specifically, Dr. Lebby testified that the

█████████████████████████████████████████████████████████████

██████████████████████ (Ex. 1 - Lebby Dep. 153:22-156:15), and similarly, Mr. Snawerdt

testified that ███████████████████████████████████████████████

███████████████████████████████." (Ex. 2 - Snawerdt Dep. 129:15-130:9).

Cisco believes that Oyster will try to use this testimony to rebut Cisco's written description and enablement defenses, as well as to argue in support of its broad theory of the benefits of the '327 Patent as it relates to damages. However, Oyster should not be permitted to argue that the '327 Patent satisfies the written description or enablement requirements by pointing to disclosures from different patents; the '327 patent specification itself must disclose sufficient information to describe to, enable, or teach persons of ordinary skill. 35 U.S.C. § 112; *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682-85 (Fed. Cir. 2015); *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298-99 (Fed. Cir. 2014). Thus, under FRE 402 and 403, Oyster should be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion that any the '327 Patent contains disclosures present only in other, unasserted patents within Oyster's portfolio (including those patents previously asserted and since withdrawn).

> F. **Motion in Limine No. 6: Oyster shall be precluded from raising any argument, evidence, testimony, insinuation, reference, or assertion regarding Cisco's license with ███████, including Ex. 2 to the Deposition of Cisco's 30(b)(6) witness, Dan Lang**

Oyster's damages expert opined that Cisco and Oyster would have agreed to a running royalty structure at the hypothetical negotiation. (Ex. 3 – 1st Dell Report ¶ 48). To support this opinion, Mr. Dell cited to testimony from one of Cisco's Fed. R. Civ. P. 30(b)(6) witnesses, Dan Lang. Mr. Lang, responding to questions regarding Cisco's licensing policies and practices, testified that Cisco "████████████████████████████████████████." (Ex. 4 - Lang Dep. 17:1-9). Mr. Lang ████████████████████████████████████████████████

████████████████████████

██████████████████████████████████████████████████████████████

██ As Mr. Lang testified, ████████████████████████████████████

████████████████████████████████████ *Id.* at 19:15-20.

████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████. Moreover, no Oyster expert has made any attempt to show this agreement is comparable from a technical or economic perspective to the agreement Cisco and Oyster would have entered in a hypothetical negotiation.

Thus, Oyster's introduction of argument, testimony, or evidence regarding the ██████ agreement is not relevant under FRE 402, and will only serve to confuse the jury and should be excluded under FRE 403. Indeed, the only purpose on which Mr. Dell used the ██████ was to show that Cisco ████████████████████████████████████. But if Mr. Dell is permitted to reference the agreement, Cisco will be forced ████████████████████ █████████████████████████████████████████████ At a minimum, ██████████████████ ████████████ should be excluded, as ███████████ are not relevant to any issue, arise from a

license to non-comparable technology, and were not cited by any expert in support of the damages at issue here. *See Tyco Healthcare Grp. LP v. E-Z-EM, Inc.*, 2010 WL 774878 at *2 (E.D. Tex. March 2, 2010) ("[P]rior license agreements … must relate to the same patents or comparable technology to be of any value to the hypothetical negotiation process."); *see also Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010).

  **G. Motion in Limine No. 7: Oyster may not raise any argument, evidence, testimony, insinuation, reference, or assertion regarding the licenses to the '500 Patent with ▮▮▮▮▮▮▮▮▮▮, including that such licenses are comparable to a license that Cisco would have entered into with respect to the '327 Patent.**

As set forth more fully in Cisco's Motion to Exclude the Opinions and Testimony of Oyster's Damages Expert, Stephen Dell, Under Fed. R. Evid. 702 and *Daubert* (Dkt. 249), Mr. Dell relies almost exclusively on two non-comparable, ▮▮▮▮▮▮▮ license agreements to U.S. Patent No. 6,665,500 (the "'500 Patent") as the foundation for his opinion that Cisco and Oyster would have agreed to a ▮▮▮▮▮▮▮. But, the '500 Patent has never been asserted against Cisco, and has no familial relationship to any of the patents ever asserted here.[2]

"This court has long required district courts performing reasonable royalty calculations to exercise vigilance when considering past licenses to technologies *other* than the patent in suit." *ResQNet.com*, 594 F.3d at 869 (citing *Lucent,* 580 F.3d at 1329 ("[A] lump-sum damages award [based on a reasonable royalty] cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, one of which is arguably in the ballpark of the jury's award, particularly when it is doubtful that the technology of those license agreements is in any way

---

[2] It also is not subject to the same terminal disclaimer as the patents asserted throughout this litigation.

similar to the technology being litigated here.")). To properly be considered, Oyster must show that the licenses are "sufficiently comparable to the hypothetical license at issue in suit." *Lucent*, 580 F.3d at 1325. "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *LaserDynamics*, 694 F.3d at 79. Rather, to rely on any license to any technology other than a patent-in-suit, "a damages expert must opine on both the technological and economic comparability." *Biscotti Inc. v. Microsoft Corp.*, No. 2:13-cv-1015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017).

Neither the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ are comparable, either technologically or economically. As a threshold matter, the ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓ (Ex. 5 - ▓▓▓▓▓▓ § 2.1), *i.e.*, exactly what is accused here. Despite this, Oyster's only basis for alleged technical comparability comes from Dr. Dallesasse, its infringement expert. Dr. Dallesasse found the '500 Patent to be technically comparable to the '327 Patent because they each relate to functionality found in optical fiber networks, but he conceded in his deposition that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 6 - Dallesasse Dep. 110:5-112:11). Under this high level test of technical comparability, there are apparently 18,000 other "fiber optic" patents that fall within this "specific and specialized field." This is not sufficient. *See*, *e.g.*, *Finjan*, 879 F.3d at 1312 (fact that that the infringing products in allegedly comparable license were also in the computer security field and that licensee was a competitor of defendant not sufficient proof of technological comparability); *Lucent*, 550 F.3d at 1328 ("Lucent's brief characterizes the four agreements as covering 'PC-related patents,' as if personal computer kinship imparts enough comparability to support the damages award."); *ResQNet*, 594 F.3d at

870 (damages expert's reliance upon licenses that did not "even mention[] the patents in suit or show[] any discernible link to the claimed technology" was improper, especially when the expert "offer[ed] little or no evidence of a link between the [licenses] and the claimed invention").

The agreements are not economically comparable either. ▮▮▮▮ ▮▮▮▮. (Ex. 5 at § 3.1). ▮▮▮▮

▮▮▮▮

*Id.* § 3.1(c) ▮▮▮▮

and, based on conversations with WTAS, Oyster Inc.'s CFO expressly identified ▮▮▮▮ The ▮▮▮▮ merely required ▮▮▮▮" and ▮▮▮▮ ▮▮▮▮). (Ex. 7 – ▮▮▮▮. § 3.1). Like the ▮▮▮▮

*Id.* ▮▮▮▮ Moreover, ▮▮▮▮ Courts regularly exclude these kinds of settlements under Federal Rule of Evidence 403, and the Court should do so here, too. *See, e.g.*, *Fenner Investments, Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010); *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794,

801 (E.D. Tex. 2007); *Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*, No. CV 12-1013-RGA, 2015 WL 456154, at *2 (D. Del. Jan. 30, 2015).

The exchanges between WTAS (now Andersen Tax) and Oyster Inc. related to WTAS's efforts to determine the fair market value of Oyster Inc.'s patent portfolio as of January 1, 2010 further confirm that neither of these Agreements are relevant to any issue in this case. Specifically, despite WTAS requesting all relevant information from Oyster Inc. and stating that ███ (Ex. 8 - ANDERSEN135), Mr. Foster (Oyster Inc.'s CFO) affirmatively chose not to even provide these agreements to WTAS for evaluation. (Ex. 9 - Loer Dep. 35:2-36:4; *id.* at 69:23-70:17).[3] Instead, ███ (Ex. 8 - ANDERSEN136).

WTAS made clear that its valuation would be based on one of three well-accepted methodologies to patent valuation—the market approach, the income approach or the cost approach. (Ex. 9 - Loer Dep. and Ex. 4 thereto). These are the exact same three approaches that Oyster's damages expert, Mr. Dell, expressly acknowledged were appropriately considered by WTAS. But, per WTAS, ███ (Ex. 9 - Loer Dep. and Ex. 2 thereto, at ANDERSEN030 ("███.")). Thus, while Oyster LLC's damages expert here criticizes WTAS's failure to use the ███ as part of a ███" (Ex. 10 - Dell 2d Supp. Report at ¶ 7), it is clear

---

[3] Indeed, Mr. Foster stated in response that WTAS needed to "bear in mind per our call [that] ███ (Ex. 8 - ANDERSEN135).

that that decision was based primarily on Oyster Inc.'s CFO admonition that none of Oyster Inc.'s prior licenses (including the ███████████████) were representative of the value of the portfolio.

These agreements suffer from every indicia to warrant exclusion: lack of technical comparability, lack of economic comparability, ███████████████████████████, and dismissed by even Oyster as being ███████████████. Cisco therefore moves in limine under FRE 402 and 403 that they be excluded and no reference made to them in this trial.

## II. CONCLUSION

Cisco respectfully asks the Court to grant its motions.

Respectfully submitted, this 18th day of April, 2018.

**COUNSEL FOR DEFENDANT
CISCO SYSTEMS, INC.**

  /s/ Eric H. Findlay
Eric H. Findlay
Brian Craft
**Findlay Craft PC**
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Louis Norwood Jameson
Matthew Christopher Gaudet
John R Gibson
Alice Snedeker
**Duane Morris LLP**
1075 Peachtree Street, NE
Suite 2000
Atlanta, GA 30309-3929
404/253-6915
Fax: 404/253-6901
Email: wjameson@duanemorris.com
Email: mcgaudet@duanemorris.com

Email: jrgibson@duanemorris.com
Email: aesnedeker@duanemorris.com

Joseph Andrew Powers
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103
215-979-1842
Fax: 215-689-3797
Email: japowers@duanemorris.com

John Matthew Baird
**Duane Morris LLP**
505 9th Street, NW
Suite 1000
Washington, DC 20004-2166
202/776-7819
Fax: 202/776-7801
Email: jmbaird@duanemorris.com

Michael J Sacksteder
**Fenwick & West**
555 California Street
12th Floor
San Francisco, CA 94104
415/875-2300
Fax: 415/281-1350
Email: msacksteder@fenwick.com

Darren E Donnelly
Armen Nercess Nercessian
**Fenwick & West LLP**
Silicon Valley Center
801 California Street
Mountain View, CA 94041
650.988.8500
Fax: 650.938.5200
Email: ddonnelly@fenwick.com
Email: anercessian@fenwick.com

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that Defendant's Motion is authorized to be filed under seal by the Protective Order, Dkt. No. 95, entered in Civil Action No. 2:16-cv-1302.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2018, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.

*/s/ Eric H. Findlay*
Eric H. Findlay

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel has complied with the meet and confer requirement of Local Rule CV-7(h) and that the motion is opposed. Counsel for Defendant Cisco communicated with Plaintiff's counsel regarding the issues presented in this Motion on multiple occasions with the last communication on April 18, 2018. Plaintiff's counsel indicated they are opposed to the relief sought herein.

*/s/ Eric H. Findlay*
Eric H. Findlay