**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| OYSTER OPTICS, LLC, <br><br> *Plaintiff,* <br><br> v. | |
| ALCATEL-LUCENT USA, INC., | 2:16-cv-01297-JRG-RSP |
| CISCO SYSTEMS, INC. ET AL., | 2:16-cv-01301-JRG-RSP |
| HUAWEI TECHNOLOGIES CO., LTD. ET AL., | 2:16-cv-01303-JRG-RSP |
| *Defendants* | |

**PLAINTIFF OYSTER OPTICS, LLC'S ADDITIONAL MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

**Page(s)**

MIL NO. 12: TO BIFURCATE TRIAL OF THE "NEW DEFENSES" AND TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR OPINION RELATED TO THE NEW DEFENSES FROM THE JURY TRIAL ................................................................................................ 1

    A.    As the Agreement Is Unambiguous, License and Release Must Be Tried to the Court 1

    B.    Implied License Is an Issue of Law for the Court to Decide ........................................ 2

    C.    Exhaustion Is Not Relevant to the Issues Before the Jury ........................................... 3

MIL 13: TO EXCLUDE NEW UNTIMELY PRIOR ART OPINIONS AND EVIDENCE AND PRIOR OPINIONS AND EVIDENCE REGARDING UNELECTED PRIOR ART .......... 4

MIL NO. 14: TO PRECLUDE ESTIMATES OF THE ACCUSED PRODUCTS CONTAINING BOTH ███████████████ FROM █████ ........................................... 7

MIL NO. 15: TO PRECLUDE UNDISCLOSED NON-INFRINGEMENT THEORIES ............. 9

MIL NO. 16: TO PRECLUDE EXPERT OPINIONS FROM FACT WITNESSES ..................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cascades Comp. Innovation, LLC, v. Samsung Elecs. Co. Ltd.*,
  70 F. Supp. 3d 863 (N.D. Ill. 2014) .................................................................................... 3

*Sun Oil Co. (Delaware) v. Madeley*,
  626 S.W.2d 726 (Tex. 1981) ................................................................................................ 2

*Cornell Univ. v. Hewlett-Packard*,
  609 F. Supp. 2d 279 (W.D.N.Y. 2009) ................................................................................ 3

*Curlett Family Ltd. P'ship, Ltd. v. Particle Drilling Techs., Inc.*,
  254 F. App'x 320 (5th Cir. 2007) ........................................................................................ 1

*Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*,
  106 F. App'x 29 (Fed. Cir. 2004) ........................................................................................ 1

*Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*,
  106 F. App'x 29, 33 (Fed. Cir. 2004) .................................................................................. 1

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
  2017 WL 1393525 (E.D. Tex. Apr. 13, 2017) ..................................................................... 6

*Glass Equipment Development, Inc. v. Besten, Inc.*,
  174 F.3d 1337 (Fed. Cir. 1999) ........................................................................................... 2

*Green v. Bank of Am.*,
  No. 4:13-cv-92, 2013 WL 6178499 (E.D. Tex. Sept. 16, 2013) ......................................... 9

*Helferich Patent Licensing, LLC v. New York Times Co.*,
  778 F.3d 1293 (Fed. Cir. 2015) ........................................................................................... 7

*Honeywell Int'l, Inc. v. U.S.*,
  609 F.3d 1292 (Fed. Cir. 2010) ........................................................................................... 3

*Hypertherm, Inc. v. American Torch Tip Co.*,
  Civ. No. 05-cv-373 2009 WL 435324 (D. N.H. Feb. 19 2009) ........................................ 10

*Jazz Photo Corp. v. Int'l Trade Comm'n*,
  264 F.3d 1094 (Fed. Cir. 2001) ........................................................................................... 7

*Lam, Inc. v. Johns-Manville Corp.*,
  718 F.2d 1056 (Fed. Cir. 1983) ........................................................................................... 8

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
  734 F.3d 1361 (Fed. Cir. 2013) ........................................................................................... 7

*Metaswitch Networks, Ltd. v. Genband US, LLC*,
  2016 WL 3618831 (E.D. Tex. Mar. 1, 2016) ...................................................................... 6

*Met-Coil Sys. v. Korners Unlimited, Inc.*,
  803 F.2d 684 (Fed. Cir. 1986) ............................................................................................. 2

*Nobelbiz, Inc. v. Glob. Connect, LLC*,
  No. 6:12-CV-244-RWS, 2015 WL 11072170 (E.D. Tex. Sept. 2, 2015) ........................... 6

*Orion IP, LLC v. Mercedes-Benz USA, LLC*,
  560 F. Supp. 2d 556 (E.D. Tex. 2008) ................................................................................ 2

*Partners Mkting. & Terminals L.P. v. U.S. Venture, Inc.*,
  2017 WL 4283946 (N.D. Ill. Sept. 27, 2017) ...................................................................... 3

*Quanta Comput, Inc. v. LG Elecs., Inc.*,
  553 U.S. 617 (2008) ............................................................................................................ 3

*Raytheon Co. v. Indigo Sys. Corp.*,
  No. 4:07-CV-109, 2009 WL 2744057 (E.D. Tex. Aug. 25, 2009 ....................................... 1

*REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*,
  932 F.2d 447 (5th Cir. 1991) .............................................................................................. 2

*Smartflash LLC v. Apple Inc.*,
  2015 WL 11089593 (E.D. Tex. Jan. 29, 2015) ................................................................... 6

*Sundance, Inc. v. DeMonte Fabricating, Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) ......................................................................................... 10

*Universal Elecs., Inc. v. Zenith Elecs. Corp.*,
  846 F. Supp. 641 (N. D. Ill. 1994) ...................................................................................... 3

*Woods v. DeAngelo Marine Exhaust, Inc.*,
  692 F.3d 1272 (Fed. Cir. 2012) .......................................................................................... 9

**Rules**

Fed. R. Evid. 701 .................................................................................................................... 10

Rule 702 .................................................................................................................................. 10

# MIL NO. 12: TO BIFURCATE TRIAL OF THE "NEW DEFENSES" AND TO EXCLUDE ANY EVIDENCE, ARGUMENT, OR OPINION RELATED TO THE NEW DEFENSES FROM THE JURY TRIAL

ALU's "new defenses" – license, release, implied license and exhaustion – should be addressed at a bench trial, and any evidence, opinion and argument relating to these defenses should be excluded from the jury trial. The defenses of express license and release are questions for the Court, unless the contract at issue is ambiguous. Here, all parties agree that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (the "Agreement") is unambiguous. The defense of implied license is always a question of law, to be determined by the Court, and it appears that there may be no dispute about whether this issue should be tried to the bench. And while exhaustion can be a jury issue, in this case any sales of accused products to which this defense allegedly applies are entirely or almost entirely post-trial, and the defense will have no effect on the damages to be determined by the jury.

### A. As the Agreement Is Unambiguous, License and Release Must Be Tried to the Court

ALU's defenses of express license or release rely on interpreting relevant portions of the Agreement. Contract interpretation is a matter of law, specifically, state law. *E.g.*, *Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, 106 F. App'x 29, 33 (Fed. Cir. 2004); *State Contracting & Eng'g Corp. v. State of Fla.*, 258 F.3d 1329, 1339 (Fed. Cir. 2001) ("Whether express or implied, a license is a contract 'governed by ordinary principles of state contract law.'"). *See also Raytheon Co. v. Indigo Sys. Corp.*, No. 4:07-CV-109, 2009 WL 2744057, at *4 (E.D. Tex. Aug. 25, 2009) ("A release is generally nothing more than a contract, interpreted under general contract principles."). Because the Agreement contains a choice of law clause specifying that it will be governed by and interpreted according to the laws of Texas, Texas contract law applies. *See* Declaration of Reza Mirzaie in Support of Additional Motions *in Limine* ("Mirzaie Decl."), Ex. A▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In Texas, if a contract is not ambiguous, its interpretation is a question of law for the court. *Curlett Family Ltd. P'ship, Ltd. v. Particle Drilling Techs., Inc.*, 254 F. App'x 320, 323 (5th Cir. 2007) ("Under Texas law, if a contract is worded so that it can be given a definite legal meaning, it is not ambiguous and its construction is

a matter of law."); *Orion IP, LLC v. Mercedes-Benz USA, LLC*, 560 F. Supp. 2d 556, 559 (E.D. Tex. 2008) ("Contract interpretation is purely a legal issue. . . . Under Texas law, the interpretation of an unambiguous contract is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present with the contract was entered.") (quotations omitted).

All parties to this case, and even in the related cases, agree that the relevant provisions of the Agreement are unambiguous. *See* Defendant's Motion for Partial Summary Judgment Regarding their Release Defense (Dkt. No. 654) at 2 (the language of the agreement "plainly, and unambiguously, releases Defendants"), 7 ("The definition of 'Licensed Products' is thus unambiguous"). *See also* Mirzaie Decl., Ex. B, ALU's Supplemental Responses to Oyster's First Set of Individual Interrogatories (No. 1), at 7 ("ALU contends that the release/express license provisions of the ▮▮▮▮▮▮▮ Agreement are unambiguous").]

The fact that the parties disagree as to the interpretation of these provisions does not render them ambiguous. "A contract is not ambiguous merely because the parties have a disagreement on the correct interpretation." *REO Indus., Inc. v. Nat. Gas Pipeline Co. of Am.*, 932 F.2d 447, 453 (5th Cir. 1991), *citing Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 727 (Tex. 1981). ALU's release and license defenses should therefore be tried to the Court.

### B. Implied License Is an Issue of Law for the Court to Decide

At this point it is unclear that any party disputes that implied license should be tried to the Court. ALU has indicated that it may stipulate to implied license being tried to the Court. Cisco has also acknowledged as much, stating in its positions of law in the May 9, 2018 Proposed Joint Pretrial Order, that "[i]mplied license is an equitable defense that does not carry a right to a jury trial, and is to be resolved separately from the Court." Dkt. 550 at 9. In any case, the law is clear. The existence of an implied license is a question of law, reserved for the Court. *See, e.g., Glass Equipment Development, Inc. v. Besten, Inc.*, 174 F.3d 1337, 1341 (Fed. Cir. 1999) (*citing Met-Coil Sys. v. Korners Unlimited, Inc.*, 803 F.2d 684, 687 (Fed. Cir. 1986) (holding that "[t]he existence of an implied license to use a patent is a question of law")); *see also Cornell Univ. v.*

*Hewlett-Packard*, 609 F. Supp. 2d 279, 290 (W.D.N.Y. 2009) (Rader, J.) ("The existence of an implied license is a question of law reserved for the court.").

      **C.**     **Exhaustion Is Not Relevant to the Issues Before the Jury**

Unlike license, implied license, and release, exhaustion can be a jury issue. However, in this case likely none, or at most very little, of the accused sales at issue in the case to be tried to the jury are subject to ALU's exhaustion defense. Thus, even if ALU is successful in its exhaustion defense, only post-trial sales will be affected, and post-trial sales are not relevant to the parties' damages cases.

ALU's exhaustion defense requires ALU to prove there has been "an authorized sale." *Quanta Comput, Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 636 (2008) (holding that exhaustion requires proof of an "authorized sale"); *Universal Elecs., Inc. v. Zenith Elecs. Corp.*, 846 F. Supp. 641, 646 (N. D. Ill. 1994). In this context, under controlling Federal Circuit law, to qualify as "an authorized sale," the transaction must be authorized "**at the time of the sale**." *Honeywell Int'l, Inc. v. U.S.*, 609 F.3d 1292, 1304 (Fed. Cir. 2010) (emphasis added); *see also Sunoco Partners Mkting. & Terminals L.P. v. U.S. Venture, Inc.*, 2017 WL 4283946 at *8 (N.D. Ill. Sept. 27, 2017) (holding that license or covenant not to sue does not retroactively authorize sales); *Cascades Comput. Innovation, LLC v. Samsung Elecs. Co. Ltd.*, 70 F. Supp. 3d 863, 869-70 (N.D. Ill. 2014) (same). In other words, sales made prior to the effective date of the Agreement cannot be subject to ALU's exhaustion defense.

Both the license and release provisions of the Agreement become effective only upon ███████ payment subject to the terms provided in ████████████████████████ This payment has not been made as of the date of this motion, as under ████████████████



████████████████████████████████████████████████████████ Mirzaie Decl., ¶ 2. There will therefore likely be little or no accused sales subject to ALU's exhaustion defense accruing before trial.

3

Post-trial sales are not relevant to either party's damages model. Oyster is seeking a running royalty through trial (and in fact at this point ALU has produced sales information only through March 31, 2018). Mirzaie Decl., Ex. C, 5th Suppl. Rpt. of Stephen E. Dell, CVA Relating to Damages (New Defenses), ¶ 4. ALU's damages expert Mr. Fancher, for his part, has asserted that ALU's new defenses, if successful, ███████████████ But he has not made any distinction between license, release, implied license and exhaustion in this calculation, and has made no calculation of the effect on his lump sum models of the separate effect of exhaustion applying to some portion of accused products sold after trial. Mirzaie Decl., Ex. D, Suppl. Report of J. Donald Fancher, June 25, 2018, ¶¶ 22-23. While exhaustion may have some relevance to post-trial damages, such as an ongoing royalty, this would be an issue for the Court, and in any case no such request has been made, nor would be unless and until Oyster prevails at trial.

**MIL 13: TO EXCLUDE NEW UNTIMELY PRIOR ART OPINIONS AND EVIDENCE AND PRIOR OPINIONS AND EVIDENCE REGARDING UNELECTED PRIOR ART**

Under the guise of a report on ALU's new ████-related defenses, ALU has improperly had its invalidity expert Dr. Papen offer 34 pages of new opinions on how prior art allegedly satisfies elements of the asserted patent claims. In many cases, these opinions are based upon prior art that ALU had not previously produced or disclosed in the case, had not charted in its invalidity contentions, and/or had not elected pursuant to the parties' agreement narrowing issues for trial. This new, untimely evidence concerning validity should be excluded.

On January 10, 2018, Dr. Papen submitted his 512-page report concerning invalidity. (Mirzaie Decl., Ex. E, Expert Report of Dr. George Papen.) As set forth in Oyster's Motions *in Limine* Nos. 1-3, Dr. Papen offered invalidity opinions that ALU had not disclosed in its invalidity contentions, using prior art references that ALU had not produced during fact discovery. (Dkt. No. 493 at 1-6.) On that same date, ALU served its election of asserted prior art (Mirzaie Decl., Ex. F, ALU's Final Election of Asserted Prior Art), pursuant to the Court's order to narrow claims and prior art (Dkt. No. 174). On April 24, 2018, Oyster and ALU reached an agreement whereby Oyster would further reduce the total number of patents and claims it asserted against ALU, and ALU

would further reduce the total number of "prior art references or combinations" it would rely on. (Mirzaie Decl., Ex. G, Emails regarding elections). On May 8, 2018, ALU served its election of prior art pursuant to that agreement. (*Id*.)

In his June 25, 2018 report, Dr. Papen again improperly seeks to expand ALU's invalidity case, devoting 34 out of the report's 46 pages to opinions concerning claim elements that were purportedly disclosed in prior art references. (Mirzaie Decl., Ex. H, Supplemental Expert Report of Dr. George Papen (June 25, 2018), at 9-16, 20-46.) Many of these opinions are entirely new. For example, Dr. Papen opines that the '446 Patent disclosed the ▇▇▇▇ of '952 claim 1. (*Id.* ¶ 37.) ALU has not elected the '446 Patent as prior art, and Dr. Papen had no opinion concerning this reference and the ▇▇▇▇ limitations in his prior report.

In his discussion of the '327 patent claims, Dr. Papen offers opinions that claim elements were taught by the ▇▇▇▇ references. (*E.g.*, *id.*, ¶¶ 53, 57, 59, 60, 63, 65, 71, 76, 78, 88, 96, 98, and 100.) None of these references was included in ALU's May 8, 2018 elections for the '327 patent. (Ex. G.) The ▇▇▇▇ and ▇▇▇▇ references were not even produced in discovery until June 2018, over a year after the deadline for ALU to identify prior art. (Mirzaie Decl., ¶ 3.)

Even for references that ALU did include in its elections, Dr. Papen offers brand-new opinions that references satisfy claim limitations which he did not address in his original report. For example, Dr. Papen's original report said that ▇▇▇▇ (Ex. E, ¶ 740.) In his June 25, 2018 report, Dr. Papen offers new and different opinions that ▇▇▇▇ (Ex. H, ¶ 53.) As another example, Dr. Papen's original report did not contend that the ▇▇e reference disclosed claim elements 36[a], 36[b], and 36[c], but rather than ▇▇▇▇ to satisfy these elements. (Ex. E, ¶¶ 743-751, 771-

5

773.) In his June 25, 2018 report, Dr. Papen offers new and different opinions that ▇ itself disclosed these elements. (Ex. H, ¶¶ 58, 65, 71.)

ALU's ▇-related defenses should not be used as an excuse for ALU to offer new invalidity opinions to the jury concerning unelected prior art, or to freely supplement its opinions concerning the elected prior art. Oyster has agreed to limit its asserted claims, in exchange for ALU agreeing to limit the prior art that it presents. Even if Dr. Papen does not offer an ultimate opinion that the new or unelected references render asserted claims invalid, permitting him to testify that claim elements were taught by these references is likely to confuse the jury and to seriously prejudice Oyster by depriving it of the benefit of the bargains represented in the Court's order to narrow claims and prior art and in the parties' April 24, 2018 agreement. *See Nobelbiz, Inc. v. Glob. Connect, LLC*, No. 6:12-CV-244-RWS, 2015 WL 11072170, at *3 (E.D. Tex. Sept. 2, 2015) (precluding "[d]efendants from presenting any evidence or argument regarding any alleged prior art not identified in their final election of prior art"); *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2017 WL 1393525, at *2 (E.D. Tex. Apr. 13, 2017) (permitting the use of the [uncharted] reference for any purpose would create the risk that the jury would use that reference for the improper purpose of finding that the [uncharted] reference was itself an anticipating reference); *Smartflash LLC v. Apple Inc.*, 2015 WL 11089593, at *1 (E.D. Tex. Jan. 29, 2015) (precluding "[a]ny use, for any purpose, of any prior art references not among Defendants' final elected references"); *Metaswitch Networks, Ltd. v. Genband US, LLC*, 2016 WL 3618831 at *4 (E.D. Tex. Mar. 1, 2016) (precluding "any argument, testimony, evidence, or reference to prior art or prior art combinations that were not included in invalidity contentions or elected").

While it is true that the issue of what in the asserted patent claims is "inventive" may be relevant to the ▇-related defenses, Dr. Papen's new prior art opinions are not part of a proper analysis of essential or inventive elements. (*See* Oyster *Daubert* Brief Regarding Dr. Papen, Dkt. No. 662.) Dr. Papen does not discuss the prior art in order to distinguish between claim elements that are inventive and those that are not. Rather, he opines that *every* claim element was

6

known in prior art. (Ex. H at 9-16, 20-46.) Moreover, as explained in Oyster's motion for summary judgment (Dkt. No. 666), the Federal Circuit has held that the analysis of essential or inventive elements should be limited to the intrinsic record, not extrinsic prior art that was not a part of the file history. *Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1309 (Fed. Cir. 2015) ("defendants have identified no basis **in the specification or file history** for" their identification of inventive elements (emphasis added)); *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1371 (Fed. Cir. 2013) (rejecting appellant's attempt to rely on expert testimony regarding prior art outside the file history to change the scope of what was inventive).

For the foregoing reasons, Dr. Papen's opinions in his June 25, 2018 report that relate to unelected prior art references should be excluded, and all of his prior art opinions in that report should be excluded unless they are identical to otherwise admissible opinions contained in his January 10, 2018 report.

**MIL NO. 14: TO PRECLUDE ESTIMATES OF THE ACCUSED PRODUCTS CONTAINING BOTH ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ FROM ▮▮▮▮▮**

ALU bears the burden of proof on their new defenses. *E.g.*, *Jazz Photo Corp. v. Int'l Trade Comm'n*, 264 F.3d 1094, 1102 (Fed. Cir. 2001) ("The burden of establishing an affirmative defense is on the party raising the defense. . . including the burden of coming forward with evidence" showing what accused products fall within the defense). Moreover, as to the effect of these defenses, ALU necessarily bears not only the burden of proof but also the burden of production, as the identification and quantification of the accused products ALU alleges to be subject to their new defenses depends on records entirely in the control of ALU. ALU has not provided records of the number or proportion of accused products that contain both a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, or even an estimate of these numbers. Nor can this number or proportion be estimated from what records ALU has provided without an unacceptable level of uncertainty and speculation. ALU should therefore be precluded from offering any such numbers, or estimates of such numbers, at trial.

Despite Oyster's specific requests for this information, ALU provided no such numbers in its interrogatory responses or deposition testimony. ALU also did not provide them in their expert reports. According to ALU, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Mirzaie Decl., Ex I, Thompson Tr. 55:22-57:6; 62:12-63:2. And ALU's damages expert does not calculate or even estimate the percentage or number of accused products containing both ▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. Mirzaie Decl., Ex. J, July 14, 2018 Donald J. Fancher Tr. 29:2-11. Instead Mr. Fancher calculates only the percentage of accused products that contain either a ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉r. Mirzaie Decl., Ex. D, Suppl. Expert Report of J. Donald Fancher, June 25, 2018, Ex. B. And even ALU's technical expert said ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Ex. K, Papen Tr., July 12, 2018 (rough) at 60:9-61:7.

In the absence of the necessary records, Oyster's damages expert did attempt to make such estimates, but was clear that his estimate was only possible by making speculative assumptions, based on "imprecise and uncertain" evidence. Ex. C, 5th Suppl. Dell Report, July 9, 2018, ¶¶ 6-8. But this does not make Mr. Dell's estimates admissible, let alone admissible as to ALU for its defenses. Moreover, it is black-letter law that, where damages numbers cannot be estimated with precision because of lack of record-keeping by the accused infringer, and "the amount of the damages cannot be ascertained with precision, any doubts regarding the amount ***must be resolved against the infringer***." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983) (emphasis added). For these reasons, ALU should not be permitted to make any belated estimates, or rely on what "imprecise and uncertain" estimates Mr. Dell was able to articulate under the presumptions set forth in *Lam*.

## MIL NO. 15: TO PRECLUDE UNDISCLOSED NON-INFRINGEMENT THEORIES

Fact and expert discovery on infringement issues closed nearly six months ago and the first trial in this matter is less than one month away. The time to provide non-infringement contentions or theories—in response to Oyster's contention interrogatories and under the expert-witness disclosure deadlines in this Court's Docket Control Order—has long passed. Thus, any theory presented at trial that was not disclosed within this lengthy pretrial process would violate the deadlines set under Rule 26 and by this Court.

Moreover, the prejudice that Oyster would suffer from the surprise of having Defendant spring on Oyster any undisclosed theory at trial is obvious. Among other things, Oyster likely would not have the right of providing its own expert opinions on the issue, nor would it or the Court have the benefit of a potential claim construction proceeding to determine the legal disputes on the issue, which would make the surprise even tougher on the jury, who potentially would not have any benefit of a possible claim interpretation from the outset of trial.

While Oyster believed the parties could reach a stipulation on this non-controversial issue without the need of briefing, defendants have not yet agreed to any such stipulation. Therefore, Oyster presents this issue as a disputed motion *in limine*, but still hopes to reach an agreement on the issue, prior to the pretrial conference. If the parties cannot reach agreement on this, preclusion is the proper remedy. *See, e.g.*, *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1280 (Fed. Cir. 2012) (excluding undisclosed invalidity evidence and holding that contention interrogatories "serve an important purpose in helping to discovery facts supporting the theories of the parties"); *Green v. Bank of Am.*, No. 4:13-cv-92, 2013 WL 6178499, at *9 (E.D. Tex. Sept. 16, 2013).

## MIL NO. 16: TO PRECLUDE EXPERT OPINIONS FROM FACT WITNESSES

Rule 701 precludes opinions proffered by witnesses who were not disclosed as testifying experts under Rule 26, unless the disclosed fact witness's testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the [] testimony or to determine a fact in issue; *and* (c) not based on scientific, technical or other specialized knowledge within the scope of

Rule 702." Fed. R. Evid. 701 (emphasis added). Courts have decided that Rule 701 does preclude lay witness testimony on the issue of infringement and other, similar issues that require specialized knowledge. *See, e.g.*, *Sundance, Inc. v. DeMonte Fabricating, Ltd.*, 550 F.3d 1356, 1363 (Fed. Cir. 2008) ("We hold that **it is an abuse of discretion** to permit a witness to testify as an expert on the issues of non-infringement or invalidity … unless that person is qualified as an expert in the pertinent art.") (emphasis added); *Hypertherm, Inc. v. American Torch Tip Co.*, Civ. No. 05-cv-373 2009 WL 435324, at *3-4 (D. N.H. Feb. 19 2009) (granting motion *in limine* to preclude any lay witness from testifying as to infringement or invalidity and holding that "[g]iven the legal landscape, no lay opinion testimony will be permitted on the issues of infringement and patent invalidity").

Here, Oyster proposes to preclude lay or fact-witness testimony on the issues of non-infringement, invalidity, the "substantial embodiment" test and "non-infringing uses," should the jury be allowed to hear testimony on the exhaustion issue. This should preclude, for example, fact-witness testimony on whether a particular component of the Defendant's accused products satisfies the "phase modulate" limitation in the asserted claims, or what could be considered a "non-infringing use," or what claim elements were "inventive" or "non-inventive."

While Oyster also believed the parties could reach a stipulation on this non-controversial issue without the need of briefing, defendants have not yet agreed to any such stipulation. Therefore, Oyster presents this issue as a disputed motion *in limine*, but still hopes to reach an agreement on the issue prior to the pretrial conference.

Dated: July 23, 2018

Respectfully submitted,

**OYSTER OPTICS, LLC**

By: /s/ *Reza Mirzaie*

Marc A. Fenster (CA SBN 181067)
E-mail: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
E-mail: rmirzaie@raklaw.com
Amir A. Naini (CA SBN 226627)
Email: anaini@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
Arka Chatterjee (CA SBN 268546)
E-mail: achatterjee@raklaw.com
Adam S. Hoffman (CA SBN 218740)
Email: ahoffman@raklaw.com
Theresa Troupson (CA SBN 301215)
Email: troupson@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone: 310/826-7474
Facsimile: 310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
Andrea L. Fair (TX SBN 24078488)
E-mail: andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 13231
Longview, Texas 75601
Tele: 903/757-6400
Facsimile 903/757-2323

**Attorneys for Plaintiff**
**OYSTER OPTICS, LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served on all counsel of record via electronic service on July 23, 2018.

                                                                                   /s/ *Reza Mirzaie*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Oyster and counsel for ALU met and conferred concerning the substance of this motion and the relief requested on multiple occasions, through multiple phone calls and through multiple emails, from July 19 to July 23. Following discussions, ALU remains opposed to this motion and the relief requested. Discussions conclusively ended in an impasse, leaving open the instant issues for the Court to resolve.

                                                                                   /s/ *Reza Mirzaie*

**CERTICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that pursuant to Local Rule CV-5(a)(7)(B) that on May 18, 2017 the Court entered a Protective Order (Dkt. 95) authorizing the filing of documents designated pursuant to the Protective Order under seal.

                                                                                   /s/ *Reza Mirzaie*