**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OYSTER OPTICS, LLC<br><br>     Plaintiff,<br><br>vs.<br><br>CISCO SYSTEMS, INC.,<br><br>     Defendant. | Case No. 2:16-CV-01302-JRG<br>  (Lead Case)<br><br><br>Case No. 2:16-cv-01301-JRG<br>  (Consolidated Case) |

**DEFENDANT CISCO SYSTEMS, INC.'S BRIEF IN RESPONSE TO**
**PLAINTIFF OYSTER OPTICS, LLC'S MOTION FOR**
**SUMMARY JUDGMENT ON CISCO'S "NEW DEFENSES"**
**(DKT NO 664)**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ..................................................................................1

II.    RESPONSE TO OYSTER'S STATEMENT OF UNDISPUTED MATERIAL
FACTS ..................................................................................................2

III.   OYSTER'S MOTION FOR SUMMARY JUDGMENT ON CISCO'S DEFENSE
OF EXHAUSTION SHOULD BE DENIED ....................................................3

    A.    Oyster's Motion Fails for Four Reasons ............................................ 3

        1.    Oyster Is Bound by its Prior Infringement Allegations that the
Fujitsu Products Satisfy Every Element of Claims of the '327
Patent.......................................................................................... 3

        2.    Dr. Brown's Analysis Under the Substantial Embodiments Test
Was Not Based on the Opinion that There Is Nothing Inventive
About the '327 Patent .............................................................. 4

        3.    Oyster's Arguments Regarding Non-infringing Uses Are Contrary
to Precedent and its Prior Infringement Allegations.................................. 8

        4.    The Law of Exhaustion Does Not Require Exhaustion of Multiple
Claims, But Dr. Brown Analyzed Multiple Claims Anyway .................... 9

    B.    The OFA Provides Authorization of Past Sales.................................... 12

IV.   OYSTER'S MOTION FOR SUMMARY JUDGMENT ON CISCO'S
DEFENSES OF RELEASE, LICENSE AND IMPLIED LICENSE SHOULD BE
DENIED...............................................................................................13

    A.    The Release in the OFA Applies to Cisco, Making Cisco's Past Sales
Expressly Licensed ............................................................... 13

    B.    If Oyster Is Correct About the Release, Then Cisco's Past Sales Are at
Least Covered by an Implied License for the Same Reasons as Exhaustion........ 14

    C.    For Cisco Sales Going Forward, Cisco Has at Least an Implied License as
a Result of the License Grant in Section 4.1 of the OFA to Fujitsu .................... 14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Beneficial Innovations, Inc. v. Advance Publications, Inc.*, No. 2:11-cv-229-JRG-
    RSP, 2014 WL 12603492 (E.D. Tex. Jan. 6, 2014)............................................................ 8-10

*Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293
    (Fed. Cir. 2015)................................................................................................................ 11-12

*High Point Sarl v. T-Mobile USA, Inc.*, 53 F. Supp. 3d 797 (D.N.J. 2014), *aff'd*,
    640 F. App'x 917 (Fed. Cir. 2016) .......................................................................................11

*Honeywell Int'l, Inc. v. U.S.*, 609 F.3d 1292 (Fed. Cir. 2010)......................................................13

*Hunt v. Armour & Co.*, 185 F.2d 722 (7th Cir. 1950). (Brief, 11-12.) .........................................11

*Jacobs v. Nintendo of Am., Inc.*, 370 F.3d 1097 (Fed. Cir. 2004) .......................................... 14-15

*JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003 (C.D. Cal. 2013), *aff'd
    in relevant part*, 797 F.3d 1039 (Fed. Cir. 2015)...................................................................3

*Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370 (Fed. Cir. 2013)....................................... 10-12

*LG Elecs., Inc. v. Hitachi, Ltd.*, 655 F. Supp. 2d 1036 (N.D. Cal. 2009) .......................................3

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361 (Fed. Cir. 2013) ...........................9

*PSN Ill., LLC v. Abbott Labs.*, No. 09 C 5879, 2011 WL 4442825
    (N.D. Ill. Sept. 20, 2011) ......................................................................................................12

*Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617 (2008) ........................................8-9, 13-14

*San Disk Corp. v. Round Rock Research LLC*, 2014 WL 2700583
    (N.D. Cal. June 13, 2014) .......................................................................................................3

*In re TR Labs Patent Litig.*, 2014 WL 3501050 (D.N.J. July 14, 2014)....................................3, 13

*United States v. Masonite Corp.*, 316 U.S. 265 (1942) ...............................................................10

*Zenith Elecs. Corp. v. PDI Commc'n Sys., Inc.*, 522 F.3d 1348 (Fed. Cir. 2008).................. 14-15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## I.    INTRODUCTION

The Court should deny Oyster's motion for summary judgment on Cisco's new defenses, which arise from the settlement and licensing agreement between Oyster and Fujitsu dated May 22, 2018 ("OFA"). (Dkt. 664, "Brief"; Dkt. 664-4, OFA.)  Oyster's Brief contradicts controlling precedent, misstates the record on material facts, and ignores other material fact issues.

Exhaustion.  Oyster's motion regarding exhaustion should be denied for four reasons.

*First,* even if the Court were to accept everything in Oyster's Brief, Oyster's motion should still be denied because Oyster fails to address the independent basis for exhaustion resulting from its prior infringement allegations of direct infringement against Fujitsu, to which it is bound for purposes of exhaustion.  Exhaustion can be established in two ways:  if the licensed item is a "patented article" (*i.e.*, it satisfies every element of a claim); or if the licensed item is a "substantial embodiment" of the patent (in which the licensed item satisfies less than all elements of a claim). Oyster's binding allegations against Fujitsu establish exhaustion under the first test, meaning there is no need to get to the "substantial embodiment" analysis.  That issue is also the basis of Cisco's Motion for Summary Judgment on Exhaustion (Dkt. 656) ("Exhaustion Motion").

*Second,* Oyster's motion—which is focused only on the "substantial embodiment" test— is predicated on an incorrect characterization of the opinion of Cisco's expert (Dr. Brown).  Oyster asserts that Dr. Brown did not do an analysis regarding the purported invention of the '327 Patent —even though that analysis is set forth in black-and-white in his report.  During the meet-and-confer on this motion, Cisco's counsel identified the sections of Dr. Brown's report with his opinions as to the purported inventive aspect of the '327 Patent, but Oyster ignores those sections.

*Third,* Oyster relies on arguments about non-infringing uses for the Fujitsu products that are foreclosed both by Supreme Court precedent (regarding the unreasonableness of those alternatives) and by Oyster's prior infringement allegations against Fujitsu (in which Oyster

alleged that Fujitsu specifically intended for customers to infringe the '327 Patent with the components at issue in this motion).

*Fourth,* Oyster misstates the facts and law in its argument that Dr. Brown's exhaustion analysis was limited to claim 36. As explained by the Federal Circuit, the Supreme Court's exhaustion jurisprudence does not require a claim-by-claim analysis to exhaust a patent in its entirety. Thus, the detailed analysis of claim 36 is by itself sufficient. Moreover, under prevailing authority and Oyster's binding infringement allegations against Fujitsu, the Fujitsu products fully or substantially embody every claim of the '327 Patent.

<u>Release, License and Implied License</u>. The remaining aspects of Oyster's motion should be denied in view of the express language of the OFA, as described in Cisco's summary judgment motion regarding the release defense. (Dkt. No. 654 at 5-8).

## II. RESPONSE TO OYSTER'S STATEMENT OF UNDISPUTED MATERIAL FACTS

<u>Oyster's Section A</u>. Cisco does not dispute Oyster's listing of asserted claims. Cisco understands that there are no other undisputed material facts asserted in this section.

<u>Oyster's Section B</u>. Cisco does not dispute that Cisco's accused products "comprise various line cards, which all include the capability of a transmitter, a receiver, and many other elements" and that the accused products include a modulator and a receiver. (Brief at 2). Cisco does not know the basis of Oyster's suggestion of "100 or so claim terms" and thus disputes it.

<u>Oyster's Section C</u>. Section C quotes various provisions of the OFA, which is attached in its entirety to Oyster's Brief as Exhibit C. To the extent the interpretation on any provisions is at issue, it is addressed in the sections below. Cisco understands that there are no other undisputed material facts asserted in this section.

Oyster's Section D.  Cisco disputes Oyster's characterization of the expert report regarding "what elements are essential or inventive elements," (Brief at 4-5), as set forth below in Section III.A.2.  Cisco also disputes Oyster's characterization of the expert record regarding alleged "non-infringing uses of the Fujitsu receivers and modulators," (Brief at 5), as set forth below in Section III.A.3.

## III.   OYSTER'S MOTION FOR SUMMARY JUDGMENT ON CISCO'S DEFENSE OF EXHAUSTION SHOULD BE DENIED

### A.   Oyster's Motion Fails for Four Reasons

#### 1.   Oyster Is Bound by its Prior Infringement Allegations that the Fujitsu Products Satisfy Every Element of Claims of the '327 Patent

Oyster's motion bypasses a critical aspect of the exhaustion analysis by failing to address whether exhaustion is satisfied because Oyster licensed a "patented article" to Fujitsu.  Instead, Oyster's Motion jumps directly into an argument that Cisco cannot show a fact issue regarding whether the Fujitsu-supplied products "substantially embody" each and every asserted claim.  But the Court need not get to the substantial embodiment issue to deny this motion, because in Oyster's previous lawsuit against Fujitsu, Oyster accused Fujitsu of direct infringement based on the Fujitsu products now at the heart of Cisco's case.  The evidence relating to those infringement allegations is set forth in detail in Cisco's Exhaustion Motion, and incorporated by reference herein. (Dkt. 656).  As set forth in Cisco's Exhaustion Motion, courts routinely hold a patent owner to its prior infringement allegations for the purposes of exhaustion.  *LG Elecs., Inc. v. Hitachi, Ltd.*, 655 F. Supp. 2d 1036, 1044 (N.D. Cal. 2009) (finding patent owner "bound to its [preliminary infringement] contentions"); *JVC Kenwood Corp. v. Arcsoft, Inc.*, 966 F. Supp. 2d 1003, 1017 (C.D. Cal. 2013) (striking patent owner's expert declaration on exhaustion as contrary to its prior infringement allegations), *aff'd in relevant part*, 797 F.3d 1039, 1047-48 (Fed. Cir. 2015); *see also In re TR Labs Patent Litig.*, 2014 WL 3501050, at *7 (D.N.J. July 14, 2014); *San Disk Corp. v.*

- 3 -

*Round Rock Research LLC*, 2014 WL 2700583, at *5 (N.D. Cal. June 13, 2014).  Throughout fact discovery in its case against Fujitsu, Oyster chose to allege in its infringement contentions that each and every claim limitation of each claim of the '327 Patent that it asserts against Cisco—including the "other 100 or so claim terms" (Brief, 3)—was practiced by each of the Fujitsu products at issue.  (Dkt 656, 3-4, citing Dkt. 656 Ex. A, Ex. B, Ex. F.)  Oyster's expert, Dr. Dallesasse also admitted this.  (Ex. A, 102:6-11 (Rough)).  Then after fact discovery closed, Oyster offered an expert opinion and then filed a complaint alleging again that the Fujitsu products directly infringed the '327 Patent and practiced each limitation of at least one claim of the '327 Patent.  (Brief, 5-7 (citing Ex. G, Ex. H, Ex. F).)  Again, Dr. Dallesasse confirmed this.  (Ex. A, 124:4-10, 130: 8-11, 134:22-135:4, 135:12-21.)  Thus, under Oyster's contentions, the Fujitsu products are patented by the '327 Patent and satisfy exhaustion under any test.[1]

Oyster failed to address the evidence of its prior allegations against Fujitsu, the admissions of its own expert Dr. Dallesasse, and the actual opinions of Dr. Brown.  Oyster's motion for summary judgment on Cisco's defense of exhaustion should thus be denied on this basis alone.

### 2.    Dr. Brown's Analysis Under the Substantial Embodiments Test Was Not Based on the Opinion that There Is Nothing Inventive About the '327 Patent

Having ignored Cisco's "patented article" evidence and all of Oyster's prior allegations against Fujitsu, Oyster argues that Dr. Brown's opinions on the alternative theory -- substantial embodiment -- are "based on a conclusion that nothing in the patent claims is inventive."  (Brief,

---

[1]  Additionally, Dr. Brown provided evidence regarding the impact of Oyster's allegations against Fujitsu by analyzing Oyster's prior allegations (Ex. B, § V.D, ¶¶ 106-119) and then offering his opinions that under Oyster's allegations and definitions of "Accused Products" or "Accused Instrumentalities," both Fujitsu products exhaust the '327 Patent as patented articles (*id.* at § VI.A.3), in addition to his substantial embodiment analysis (*id.* at § VI.A.4 and 5).

1, 4, 8.)  The Court need only look at Dr. Brown's report under the "essential elements" section to dispose of Oyster's argument:



(Ex. B, ¶ 206, *see also* ¶¶ 211, 251-346 (analyzing claim 36).)  If Oyster's issue is with the first part of the first sentence quoted above



then Oyster's position would be that the price to assert exhaustion via "substantial embodiment" is to categorically concede that the patent is valid over the prior art (*i.e.*, that it is inventive).  Dr. Brown (like all of Cisco's experts) does not hold that opinion.  Instead, Dr. Brown notes that

" *Id.*

This is analogous to the assumption of validity made by a damages expert.

Turning to the Fujitsu products, Dr. Brown's opinion as to how the Fujitsu modulator products can embody the                              functionality is based on Oyster's allegations that the Fujitsu modulator product was a transceiver card that practiced each and every claim element.  (Ex. B, ¶¶ 184-193, 212.)  Thus, there is nothing improper about Dr. Brown's opinions, which establish exhaustion as a matter of law under his patented article analysis, and a triable issue of fact under his substantial embodiment analysis.

Oyster attempts to argue that Dr. Brown's opinion based on the intrinsic record was that

███████████████████████████████████████████████.”  (Brief, 4,

emphasis added.)  But that is not Dr. Brown's opinion based on the intrinsic record.  Dr. Brown

stated his opinion in his paragraph 206, quoted above.  (*See also* Ex. B, ¶¶ 128-158 (analyzing

specification) and ¶¶ 159-169 (analyzing prosecution history).)  Contrary to Oyster's contention,

Dr. Brown opined specifically:  "A review of the prosecution history below suggests that the '327

Patent was allowed on the basis of monitoring of energy levels of telecommunications signals, as

opposed to monitoring of diagnostic signals in the prior art."  (Ex. B., ¶ 159, *see also* ¶ 165 (quoting

Applicant's fundamental argument:  ("Thus Darcie [reference] does not measure an energy level

of the optical signals for telecommunication as now claimed, but rather only those of a diagnostic

signal.")))  Dr. Brown then properly applied that opinion, together with his opinions regarding the

teaching of the specifications as understood by a person of ordinary skill in the art, as described

above.  Dr. Brown's deposition testimony was consistent with his report.  (Ex. C, 137:12-23

(Rough) ("what got it over the hump for the Patent Office was the phrase 'transmitting optical

signals for telecommunications.'  The fact that they were applying the energy level detector to

telecommunication signals as opposed to the diagnostic signals that had been in the prior art and

that apparently had been object objected to by the Patent Office.").)

Oyster attempts to tie the entirety of Dr. Brown's opinions about the inventive aspects of

the energy level detector to the *transmitt*er limitations in the claims.  Oyster's effort is inconsistent

with Dr. Brown's opinions, and at most, creates a question of fact for trial regarding the inventive

aspects of the '327 Patent.  In this regard, Oyster ignores the fact that transceivers for transmitting

and receiving telecommunication signals were plainly in the prior art (and thus not inventive), as

its own expert declared (Ex. D, ¶ 23) and as admitted by the patent itself (Ex. E, 1:15-44).  What

was different, as argued by the applicant in the prosecution history, was that the *energy level*

*detector* on *the receiver* measured telecommunication signals (not that the *transmitter* transmitted telecommunication signals, which happens in every telecommunication system). Indeed, that is exactly what Oyster argued during Markman: "[T]he arguments made to distinguish the *Darcie* prior art reference were based upon the fact that *Darcie* did not measure **any** optical signals for telecommunications . . . ." (Dkt. 167, at 11.)[2] Thus, the purported invention offered by the prosecution history lies in the energy level detector in the receiver being used with telecommunication signals, as opined by Dr. Brown for purposes of exhaustion. (Ex. B ¶¶ 159, 165.)

Furthermore, Dr. Brown's opinions do not begin-and-end with the prosecution history; they also consider the specification. He opined that the brief, generic description and applicant's admitted prior art in the specification would lead a person of ordinary skill in the art to conclude that the invention was not in the transmitter, and the invention was not the combination of the transmitter and receiver into a transceiver. (*See, e.g., id.* at ¶¶ 135, 138, 142, 143, 146.) That is consistent with Dr. Brown's opinion that the purported inventive aspect was the monitoring of telecommunication signals, which are substantially embodied by the Fujitsu receiver as set forth in Dr. Brown's substantial embodiment analysis.

At best, Oyster is raising a fact dispute – one on which even its own witnesses appear to disagree. One of Oyster's technical experts, Dr. Lebby, opined in reopened discovery that the

████████████████████████████████████████████████████████████████
████████████████████████████████████████████

█████████████████████████████ (Ex. F, ¶¶ 27-28) and ████████████████████████████████

---

[2] The Court thud found that a "reasonable reading of this passage in the context of the claim language, however, is that 'the transmitted optical signals' are the signals being received by the receiver (having been transmitted elsewhere), not the signals being transmitted by the recited transmitter." (Dkt. 190, 40.)

███████ (*id.* at ¶ 37.)  In contrast, Oyster's other expert, Dr. Dallesasse, appears to agree with Cisco's expert that the transceiver elements were in the prior art.  (Ex. A, 13:15-23; 14:9-15:1, 16:3-22; Ex. G, 71:17-72:11 (Rough); Ex. H, 125:1-128:19.)  Oyster's inventor, Peter Snawerdt, also appears to agree with Cisco's expert.  (Ex. I, 135:4-7.)  In sum, Dr. Brown's inventive aspect analysis is proper and even supported by two of Oyster's witnesses, and at the very least creates a fact issue precluding summary judgment against Cisco.

### 3. Oyster's Arguments Regarding Non-infringing Uses Are Contrary to Precedent and its Prior Infringement Allegations

Oyster also bases its motion on the "intended and reasonable use" element of the substantial embodiment test.  (Brief, 12-13.)  Again, this is only relevant if all claim elements are not satisfied as a matter of law in light of Oyster's binding allegations that the Fujitsu products satisfy every element of at least one claim of the '327 Patent.

Oyster makes two arguments with respect to the Fujitsu products.  First, it argues that one of Fujitsu's intended and reasonable uses of the products was to operate them using 8QAM/16QAM, which Oyster contends does not infringe the '327 Patent.  (Brief, 5, 12.)  Second, Oyster argues that another intended and reasonable use would be to simply not use energy level detection.  (*Id.* at 12-13.)  Its argument on both points is essentially that Cisco could disable or not use the features in the Fujitsu products that Oyster alleges practices its patents – *i.e.*, QPSK and the energy level detection components such as the monitoring photodiode in the Fujitsu receivers.  (*Id.*)  Oyster's argument fails for two reasons.

First, the ability to disable or not use features does not create a reasonable non-infringing use: "since the features partially practicing the patent are what must have an alternative use, suggesting that they be disabled is no solution. The disabled features would have no real *use.*" *Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 632 n.6 (2008); *Beneficial Innovations,*

*Inc. v. Advance Publications, Inc.*, No. 2:11-cv-229-JRG-RSP, 2014 WL 12603492, at *5 (E.D. Tex. Jan. 6, 2014).

Second, Oyster would have to show that Fujitsu actually intended for Cisco to disable or not use those features: "alternative uses are relevant to the exhaustion inquiry under *Quanta* only if they are both 'reasonable *and intended*' by the patentee or its authorized licensee." *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1369 (Fed. Cir. 2013). That is, "[a]lternative uses that are plainly not intended are not relevant to the issue of patent exhaustion." *Beneficial,* 2014 WL 12603492, at *5. Of course, Oyster has presented no such evidence. To the contrary, in its April 2018 complaint, Oyster pled that Fujitsu had the specific intent necessary to induce its customers, of which Cisco is one, to practice the '327 Patent:

> In addition [to direct infringement], Defendant is actively inducing others, such as its customers and end users of '327 Accused Instrumentalities, services based thereupon, and related products and/or processes, to directly infringe each and every claim limitation, including without limitation claim 14 of the '327 Patent, in violation of 35 U.S.C. § 271(b). . . . Defendant is knowingly inducing its customers and/or end users to directly infringe the '327 Patent, *with the specific intent to encourage such infringement, and knowing that the induced acts constitute patent infringement*. Defendant's inducement includes, for example, providing technical guides, product data sheets, demonstrations, software and hardware specifications, installation guides, and other forms of support that induce its customers and/or end users to directly infringe the '327 Patent.

(Dkt. 656-9 at ¶ 50, emphasis added.) As Oyster is bound by its prior infringement allegations, it cannot now argue to the jury that Fujitsu did *not* intend for its customers to practice the claims of the '327 Patent.

### 4.     The Law of Exhaustion Does Not Require Exhaustion of Multiple Claims, But Dr. Brown Analyzed Multiple Claims Anyway

Oyster argues that Dr. Brown only analyzed claim 36, and that more is required under the law to exhaust a patent. (Brief, 11-12.) Oyster is wrong on the facts and law.

On the facts, Dr. Brown first analyzed Oyster's infringement contentions, expert opinion and complaint to opine on all of the different places that Oyster asserted that the Fujitsu products directly infringed the '327 Patent.  (*Supra* § III.A.1.)  Thus, Dr. Brown opines that, under Oyster's infringement allegations, the Fujitsu products practice each and every claim limitation of <u>every claim</u> asserted against Cisco.  (*Id.*)  Turning to substantial embodiment, Dr. Brown not only does a comprehensive element by element analysis of representative claim 36 (Ex. B., ¶¶ 250-346), he also analyzes the other claim limitations throughout his report (*see, e.g., id.* at ¶¶ 130-158, 211, 214-230).  Thus, Oyster is incorrect in its contention that that Dr. Brown only analyzed claim 36.

Oyster is also wrong on the law.  Even if Dr. Brown had only analyzed claim 36, that would be sufficient to establish exhaustion of the entire patent.  To succeed on its exhaustion defense, Cisco does not have to show that the Fujitsu products meet every element of each asserted claim. The Federal Circuit has explained that the Supreme Court's "patent exhaustion jurisprudence has focused on the exhaustion of the patents at issue in their entirety, rather than the exhaustion of the claims at issue on an individual basis."  *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1374-75 (Fed. Cir. 2013) (citing *Quanta*, 553 U.S. at 634-35; *Univis*, 316 U.S. at 249-50); *Beneficial Innovations, Inc. v. Advance Publications, Inc.*, No. 2:11-cv-229-JRG-RSP, 2014 WL 12603492, at *4 (E.D. Tex. Jan. 6, 2014).  To "permit a patentee to reserve specific claims from exhaustion would frustrate the purposes of the doctrine, one of which is to provide an efficient framework for determining when a patent right has been exhausted."  *Keurig*, 732 F.3d at 1374-75 (citing *Univis*, 316 U.S. at 251 ("[T]he purpose of the patent law is fulfilled . . . when the patentee has received his reward. . . .")); *United States v. Masonite Corp.*, 316 U.S. 265, 278 (1942) ("The test has been whether or not there has been such a disposition of the article that it may fairly be said that the patentee has received his reward for the use of the article.").  Thus, evaluation of exhaustion on a

claim-by-claim basis is unacceptable because the "confusion that would be created by [this] approach would produce uncertainty regarding the rights of both third parties and end users." *Keurig*, 732 F.3d at 1374-75.  *See also High Point Sarl v. T-Mobile USA, Inc.*, 53 F. Supp. 3d 797, 809 (D.N.J. 2014), *aff'd*, 640 F. App'x 917 (Fed. Cir. 2016) (*Keurig* "expressly rejected the patent holder's argument that patent exhaustion must be adjudicated on a claim-by-claim basis").

While Oyster argues that each claim defines a separate invention, that argument was rejected by *Keurig*.  Oyster does not cite any Supreme Court precedent, and the cases it does cite are distinguishable.  Oyster first cites to *Hunt v. Armour & Co.*, 185 F.2d 722, 729 (7th Cir. 1950). (Brief, 11-12.)  That case is an outdated 1950 case from the Seventh Circuit dealing with patent exhaustion as a species of patent misuse, and the court did not contemplate exhaustion by substantial embodiment.  185 F.2d at 729.  As between it and the Supreme Court opinions and *Keurig* decisions above, the authorities cited by Cisco are controlling, and *Hunt* is no longer good law.  But, even if *Hunt* were to provide an exception to the rule of exhaustion (which it does not), the exception is not present in this case.  In the patent in *Hunt*, there were claims drawn to components ("fingers"), and other claims drawn to machines that used the fingers, separately licensed.  *Id.*  In contrast, each of the claims of the '327 Patent is drawn to the same type of claim – they are all drawn to the apparatus of the transceiver card.  For *Hunt* to be analogous, the '327 Patent would need to have had separate claims drawn just to the modulator, or just to the receiver.

The second case that Oyster cites is *Helferich Patent Licensing, LLC v. New York Times Co.*, 778 F.3d 1293, 1295 (Fed. Cir. 2015).  *Helferich* contradicts *Hunt* and in relevant part is consistent with the authority cited above.  To the extent Oyster argues it is in conflict with the authorities cited above, the latter are controlling.  In *Helferich*, the patent owner had more than 30 patents in a portfolio having claims directed to content providers ("content" claims) and other

claims directed to cellular handsets ("handset" claims). *Id.* at 1295. Only content claims were asserted in the litigation. *Id.* Virtually all handset makers were licensed to make and sell handsets. *Id.* at 1296. The court found that exhaustion did not apply because the content providers were accused of direct infringement (handset users were not required to practice any claim limitation or required to be a direct infringer to support indirect infringement) and the content providers were not "authorized acquirers" of anything – they did not buy handsets from licensed handset makers. *Id.* at 1302. Thus, the case did not present anything like the normal exhaustion facts. In contrast, the court observed for handset users that "under the doctrine of patent exhaustion, those [handset maker] licenses eliminate for the owners/possessors of handsets acquired from the licensed manufacturers—'authorized acquirers'—*any legal restriction the patents* would otherwise impose on them through the patent statute." *Id.* at 1296-97 (emphasis added.) Consistent with *Keurig*, the *Helferich* court acknowledge that the authorized sale of the handset exhausted any and all patent rights for the authorized purchaser – not just a particular group of claims or patents. *Helferich* does not stand for the proposition that an authorized sale of a patented item must embody more than one claim of a patent; instead, the authorized sale exhausts all right in the patent.

## B. The OFA Provides Authorization of Past Sales

Oyster's brief makes a last-ditch argument that the OFA does not provide authorization for past sales. (Brief, 13-14.) Oyster does not dispute that authorization is given for Fujitsu's sales going forward. To argue that past sales are not protected by exhaustion, Oyster's Brief jumps between case law on express licenses and general covenants not to sue, and then extrapolates from that case law that Fujitsu's past sales to Cisco are not authorized under the OFA. (*Id.*) In doing so, Oyster ignores that past sales in the Fujitsu Agreement are covered by a release, not a forward-looking covenant not to sue. (Dkt. 664-4, § 3.1.) Not surprisingly, courts that have analyzed exhaustion in the context of a release for past sales find authorization for past sales. *See, e.g., PSN*

- 12 -

*Ill., LLC v. Abbott Labs.*, No. 09 C 5879, 2011 WL 4442825, at *10 (N.D. Ill. Sept. 20, 2011);

(citing *TransCore, LP v. Elec. Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir.

2009); *see also In re TR Labs Patent Litig.*, No. 09-3883 PGS, 2014 WL 3501050, at *3 (D.N.J.

July 14, 2014) (finding exhaustion for sales predating covenant pertaining to such sales).

Oyster's citations to cases that did not deal with a release are not on point.  And, it is telling

that Oyster does not even argue that a release directed to past sales does not convey authorization

for those sales.  (Brief, 13-14.)  Instead, *Oyster* cites *Honeywell* for the point that "to qualify as

'an authorized sale,' the transaction must be authorized 'at the time of the sale.'" (*Id.*) (citing

*Honeywell Int'l, Inc. v. U.S.*, 609 F.3d 1292, 1304 (Fed. Cir. 2010).)  In that case, the Federal

Circuit found the patentee's prior sales did not exhaust the patent because at the time of the sales,

the patentee did not own the patents, and thus, there was no "authorized sale." *Id.*  That case has

nothing do with the impact of a release on exhaustion.

## IV.   OYSTER'S MOTION FOR SUMMARY JUDGMENT ON CISCO'S DEFENSES OF RELEASE, LICENSE AND IMPLIED LICENSE SHOULD BE DENIED

### A.   The Release in the OFA Applies to Cisco, Making Cisco's Past Sales Expressly Licensed

Oyster argues that the release in Section 3.1 of the OFA is governed by the *Quanta*

language after the Licensed Product definition in Section 1.3.  (Brief, 7.)  That argument, at best,

applies to implied license, discussed in the next section.  As set forward in Cisco's Motion for

Summary Judgment on Release (Dkt. 654, "Release Motion"), the release in Section 3.1 of the

OFA applies expressly to Cisco as a customer of Fujitsu.  In summary, the release in Section 3.1

extends to use, sale or disposition, and grants those rights to both Cisco and Cisco's customers.

(Release Motion, 2, 7-8; OFA § 3.1.)  The language in the Release depends only on whether a

particular article is a Licensed Product.  (*Id.*)  Under the definition of the "Licensed Product,"

Fujitsu's entire product catalog is a Licensed Product.  (Release Motion, 5-6; OFA § 1.3.)  By

████████████████████████████████████████████████████████

████████████████████████████████████████████ Section 1.3 places a

limit on the scope of implied licenses that may otherwise arise from the Agreement, especially the

license grant in Section 4.1 that is silent as to customers.  (Release Motion, 2, 5-6; OFA § 4.1.)  In

contrast, the language in the release provides express rights to Fujitsu's customers that are not

governed by implied license principles.   Thus, while the release does not extend to Cisco's

products that do not use the Fujitsu products, it does extend to cover Cisco's use and sales of the

Fujitsu products in transceivers as accused.  Cisco's use is within the express scope of the release,

making the Cisco sales under the Release clause licensed to the '327 Patent.

### B.  If Oyster Is Correct About the Release, Then Cisco's Past Sales Are at Least Covered by an Implied License for the Same Reasons as Exhaustion

A customer can obtain an implied license to use the allegedly infringing product from the

express licenses between the patent holder and the product manufacturers." *Zenith Elecs. Corp. v.

PDI Commc'n Sys., Inc.*, 522 F.3d 1348, 1360 (Fed. Cir. 2008). *See also Jacobs v. Nintendo of

Am., Inc.*, 370 F.3d 1097, 1100 (Fed. Cir. 2004).  Even if Oyster were correct that the release in

§ 3.1 is governed by the clarification in the last sentence of the definition of Licensed Product,

that clarification is consistent with the substantial embodiment test under *Quanta.*  Thus, at a

minimum then, Oyster's motion should be denied for the same reasons that Oyster's motion against

Cisco's exhaustion defense should be denied because Cisco satisfies that language in the definition

and accordingly, at a minimum, enjoys an implied license under the release.

### C.  For Cisco Sales Going Forward, Cisco Has at Least an Implied License as a Result of the License Grant in Section 4.1 of the OFA to Fujitsu

Oyster argues that Cisco's rights under the go forward license under Section 4.1 of the

Agreement are limited to the substantial embodiment language in the last sentence of the "Licensed

Product" definition.  (Brief, 4.)  Even if true, a reasonable jury could easily find in favor of Cisco

- 14 -

that the Fujitsu products substantially embody the '327 Patent, and therefore enjoy at least an

implied license going forward.  *Zenith Elecs.*, 522 F.3d at 1360; *Jacobs,* 370 F.3d at 1097.

Dated:  July 27, 2018

**COUNSEL FOR DEFENDANT
CISCO SYSTEMS, INC.**

*/s/ Eric H. Findlay*
Eric H. Findlay
Brian Craft
**Findlay Craft PC**
102 N College Avenue
Suite 900
Tyler, TX 75702
903/534-1100
Fax: 903/534-1137
Email: efindlay@findlaycraft.com
Email: bcraft@findlaycraft.com

Louis Norwood Jameson
Matthew Christopher Gaudet
John R Gibson
Alice Snedeker
**Duane Morris LLP**
1075 Peachtree Street, NE
Suite 2000
Atlanta, GA 30309-3929
404/253-6915
Fax: 404/253-6901
Email: wjameson@duanemorris.com
Email: mcgaudet@duanemorris.com
Email: jrgibson@duanemorris.com
Email: aesnedeker@duanemorris.com

John Matthew Baird
**Duane Morris LLP**
505 9th Street, NW
Suite 1000
Washington, DC 20004-2166
202/776-7819
Fax: 202/776-7801
Email: jmbaird@duanemorris.com

## <u>CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL</u>

I certify that the foregoing document is authorized to be filed under seal by the Protective

Order, Dkt. No. 95, entered in Civil Action No. 2:16-cv-1302.

*/s/Eric H. Findlay*
Eric H. Findlay


## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 27, 2018, I electronically filed the foregoing document with

the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of

such filing to all counsel of record.

*/s/Eric H. Findlay*
Eric H. Findlay