**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| OYSTER OPTICS, LLC, *Plaintiff,* v. | |
|---|---|
| CORIANT NORTH AMERICA, LLC ET AL., | 2:16-cv-01302-JRG-RSP LEAD CASE |
| ALCATEL-LUCENT USA, INC., | 2:16-cv-01297-JRG-RSP |
| CISCO SYSTEMS, INC. ET AL. | 2:16-cv-01301-JRG-RSP |

*Defendants.*

# PLAINTIFF OYSTER OPTICS, LLC'S OPPOSITION TO DEFENDANT ALCATEL-LUCENT USA'S PROPOSED BILL OF COSTS

# TABLE OF CONTENTS

Pages

I. INTRODUCTION ...................................................................................................1

II. ARGUMENT .........................................................................................................2

    A.     The Court Should Exercise Its Discretion to Delay Deciding Costs Issues Until After Appeal ..................................................................................................2

    B.     Any Costs Taxed at This Stage Should be Apportioned Between the Appealed and Stayed Cases ...............................................................................................4

    C.     Several Categories of ALU's Purported Costs Are Not Taxable ............................5

        1.     ALU Seeks to Tax Incidental Deposition Costs that Are Not Recoverable ........................................................................................6

        2.     ALU Seeks to Recover Deposits Forfeited Due to the Trial Continuance Without Legal Justification ........................................................................10

        3.     ALU Seeks to Recover Unspecified and Unsupported Costs for Copying, Binding, and Data Processing ....................................................................11

        4.     ALU's Costs for its *Markman* Tutorial and Trial Graphics Consultants Are Not Taxable Without Advance Court Approval........................................12

# TABLE OF AUTHORITIES

Pages

**Cases**

*Ameranth, Inc. v. Menusoft Sys. Corp.*,
  No. 2:07-CV-271, 2011 WL 13196295 (E.D. Tex. May 25, 2011) ...................................... 5, 10

*Coats v. Penrod Drilling Corp.*,
  5 F.3d 877 (5th Cir. 1993) ................................................................................................... 10

*Crawford Fitting Co. v. J. T. Gibbons, Inc.*,
  482 U.S. 437 (1987) ........................................................................................................... 4, 5

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
  2015 WL 164072 ................................................................................................................. 11

*DSS Tech. Management Inc. v. TSMC, Ltd.*,
  2016 WL 5942316 (E.D. Tex.) ........................................................................................ 12, 13

*Eolas Techs. Inc. v. Adobe Sys., Inc.*,
  891 F. Supp. 2d 803 (E.D. Tex. 2012) ................................................................................. 13

*Eolas Techs. Inc. v. Amazon.com, Inc.*,
  521 F. App'x 928 (Fed. Cir. 2013) ....................................................................................... 14

*Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*,
  2017 WL 3044594 (E.D. Tex.) ........................................................................................ 12, 13

*Farmer v. Arabian Am. Oil Co.*,
  379 U.S. 227 (1964) .............................................................................................................. 6

*Feld Motor Sports, Inc. v. Traxxas, LP*,
  2016 WL 2758183 (E.D. Tex.) .............................................................................................. 7

*Fogleman v. ARAMCO (Arabian Am. Oil Co.)*,
  920 F.2d 278 (5th Cir. 1991) ............................................................................................ 6, 12

*Freeny v. Apple Inc.*,
  2014 WL 6847808 (E.D. Tex.) ............................................................................................. 11

*Home Depot, U.S.A., Inc. v. Federal Ins. Co.*,
  2003 WL 470545 (E.D. Tex.) ............................................................................................... 11

*Kohus v. Toys 'R' Us, Inc.*,
  282 F.3d 1355 (Fed. Cir. 2002) ........................................................................................... 13

*Kroy IP Holdings, LLC v. Safeway, Inc.*,
 2015 WL 4776501 (E.D. Tex.) .................................................................................. 7, 11, 13

*Louisiana Power & Light Co. v. Kellstrom*,
 50 F.3d 319 (5th Cir. 1995) ................................................................................................ 13

*Maurice Mitchell Innovations, L.P. v. Intel Corp.*,
 491 F. Supp. 2d 684 (E.D. Tex. 2007) ............................................................................. 7, 11

*Motion Games, LLC v. Nintendo Co.*,
 2016 WL 9136171 (E.D. Tex. 2016) ............................................................................ 6, 7, 12

*Obey v. Frisco Med. Ctr. L.L.P.*,
 No. 4:13-CV-00656, 2015 WL 1951581 (E.D. Tex. Apr. 29, 2015) ......................................... 5

*Paez v. Gelboym*,
 2013 WL 1950057 (E.D. Tex. 2013) ................................................................................... 6, 7

*Serling v. Am. Airlines, Inc.*,
 237 F. App'x 972 (5th Cir. 2007) ............................................................................................ 5

*Sieber & Calicutt v. Sphere Drake Ins. Co.*,
 2003 WL 470546 (E.D. Tex.) ................................................................................................ 11

*Summit Tech., Inc. v. Nidek Co.*
 435 F.3d 1371 (Fed. Cir. 2006) ............................................................................................. 13

## Statutes

28 U.S.C. § 1920 ................................................................................................................ 5, 6, 10

## Treatises

Federal Practice and Procedure § 2668 (3d ed.) .............................................................................. 4

## Rules

Federal Rule of Civil Procedure 54(d) .............................................................................................. 5

I.       **INTRODUCTION**

Plaintiff Oyster Optics, LLC ("Oyster") opposes the proposed bill of costs submitted by Defendant Alcatel-Lucent, USA Inc. ("ALU") because it is premature to tax costs in this case and because ALU has failed to provide adequate support to establish that its costs are taxable.

This case has an unusual procedural posture; a portion of the accused products were eliminated by summary judgment on ALU's release defense, leaving all of Oyster's claims live but against a reduced pool of accused products. The parties agreed to sever and stay the claims against that smaller group of accused products so that Oyster could appeal the partial summary judgment. Thus, the Court divided Oyster's claims into two cases: the case involving the accused products eliminated by partial summary judgment, in which a final judgment was entered and which Oyster has appealed (the "Appealed Case"), and the case involving the remaining accused products, which has been stayed and in which no judgment has been entered in favor of either party (the "Stayed Case").

However, based on the grant of partial summary judgment, ALU believes it is now entitled to *all* its costs, even those incurred in connection with issues that remain live in the Stayed Case, in which no prevailing party has been determined. Any determination of costs at this point would therefore necessarily be incomplete and inefficient. Therefore, the Court should exercise its discretion to delay taxing costs until this entire litigation is closed.

If the Court does tax costs now, the Court should apportion costs between the Appealed Case and the Stayed Case. Issues of infringement, validity, claim construction, and damages remain live in the Stayed Case, and no party has prevailed on those issues; therefore, all costs associated with those issues (the majority of ALU's proposed costs) should be eliminated from ALU's bill of costs for the time being. Alternatively, the Court may choose in its discretion to tax some reasonable *pro rata* portion of ALU's claimed costs, in recognition that the majority costs were incurred in the course of litigation that has not yet come to final judgment. But the Court should reject ALU's demand for *all* its costs incurred in *both* the Appealed and Stayed Cases.

Moreover, regardless of when ALU's costs are considered, ALU has failed to show that it is entitled to several categories of its proposed costs. ALU seeks to tax costs related to various depositions without showing that those costs were necessary, rather than merely incidental or for the convenience of counsel. ALU seeks to recover its costs for nonrefundable hotel and catering deposits and airfare forfeited because trial was continued, but ALU does not (and cannot) cite to Fifth Circuit precedent for taxing such costs. ALU further seeks various costs related to printing, binding, and processing documents, but ALU provides next to no information or documentation to show the nature or purpose of those costs, let alone that those costs were necessary for trial. Finally, ALU seeks to recover the costs of producing its *Markman* technology tutorial and trial graphics, but ALU fails to show that those costs were required or approved by the Court, a prerequisite for taxing such expenses.

For the foregoing reasons, Oyster respectfully asks that the Court continue the taxation of costs until after final resolution of both the Appealed and Stayed Cases. In the alternative, Oyster asks that the Court apportion ALU's costs to properly reflect that ALU is not entitled to costs incurred in connection with the Stayed Case. Finally, Oyster respectfully asks that the Court reject ALU's proposed costs as enumerated specifically below.

## II. ARGUMENT

### A. The Court Should Exercise Its Discretion to Delay Deciding Costs Issues Until After Appeal

This case presents an unusual posture. The Court granted partial summary judgment on Defendants' release defense, thereby eliminating from the case a portion of the accused products. Thereafter, the parties, with the assistance of the mediator and the Court, reached an agreement to sever and stay the remaining claims in order to achieve the equivalent of an interlocutory appeal. Dkt. No. 845. The Court granted the joint motion to sever and stay, finding that the requested relief served the interest of judicial economy. Dkt. No. 850. Therefore, the Court split the actions in two: the case involving a portion of the accused products and in which Oyster's

appeal of summary judgment is now pending (the Appealed Case), and the case involving the remaining accused products that were not affected by the summary judgment order (the Stayed Case).

There is therefore a high likelihood of further proceedings on costs in the Stayed Case, making the determination of costs at this point inefficient and undermining the very judicial economy that was the basis the Court's bifurcation order. Dkt. No. 850.

Moreover, until the Court severed the cases, the Appealed Case and the Stayed Case proceeded as a single, unified action, with no distinction between them as to costs. Therefore, most of the costs that ALU now seeks were incurred in connection with *both* the Appealed Case and the Stayed Case. But ALU believes it is now entitled to the entirety of its costs, ignoring that most of its costs cannot be fairly attributed only to the Appealed Case. For example, ALU seeks costs that it incurred during the claim construction process. But claim construction took place before the cases were severed, and the same claim construction would be applied in both cases, meaning that ALU's purported claim construction costs cannot be isolated solely to the Appealed Case. It would be impossible to divide the cost of ALU's technology tutorial between the Appealed Case and the Stayed Case; the cost was incurred in *both* and therefore cannot yet be taxed. ALU is not the prevailing party in the Stayed Case; *no* party has yet prevailed, and therefore *no* party is yet entitled to costs associated with the Stayed Case. The same is true of ALU's claimed costs related to infringement, validity, and damages issues, which, with claim construction, make up the majority of the costs that ALU seeks.

These inefficiencies would be especially great if Oyster ultimately prevails in the Stayed Case, as it would then be entitled to its own costs for the same depositions, hearings, and other expenses that ALU now seeks. It would be an absurd outcome for each party to pay the other side's costs for a given deposition or hearing. Furthermore, should Oyster prevail on appeal of the Appealed Case and trial on remand, Oyster would then be entitled to its costs, and the Court's energy spent determining ALU's costs at this early stage would be wasted.

ALU's fellow defendant Cisco recognized the practical benefits of delaying costs issues in their similarly situated case. Cisco itself proposed to delay costs issues, recognizing the efficiency benefits and lack of prejudice to the defendants from any delay. ALU refused to consider such an approach, insisting on recovering *all* its costs *now*.

The Court has the discretion to adopt the most practical and efficient solution: waiting to tax costs until the entire litigation is resolved. *Serling*, 237 F. App'x at 976 ("[t]he district court has broad discretion in taxing costs"); *see* 10 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2668 (3d ed.) ("In keeping with the discretionary character of the rule, the federal courts are free to pursue a case-by-case approach and to make their decisions on the basis of the circumstances and equities of each case."). Once the entire litigation is resolved, it will be clear which party is entitled to which costs. Determining costs now risks confusion, redundancy, and wasted resources by both the parties and the Court. The Court should exercise its considerable discretion to delay ruling on costs until the entire litigation is resolved.

### B. Any Costs Taxed at This Stage Should be Apportioned Between the Appealed and Stayed Cases

If the Court proceeds to tax costs at this stage, the Court should apportion costs between the Appealed and Stayed Cases. Apportionment of costs is well within the Court's broad discretion. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 447 (1987) ("Except where expressly prohibited by statute from doing so, the Rule vests in the district court a sound discretion over the allowance, disallowance, or apportionment of costs in all civil actions.") (quotation omitted). While Oyster maintains that taxing costs would be premature at this phase, any award of costs must recognize that the majority of costs that ALU seeks relate to issues that have not yet been decided. Until the two cases were severed, they were a single case, and all costs were incurred in that single case. As explained above, any trial in the Stayed Case will involve issues of claim construction, infringement, validity and damages. None of those issues were decided by the judgment entered in the Appealed Case. Therefore, all costs associated with

4

those issues will ultimately have been incurred for trial in the Stayed Case, and should not be taxed in the Appealed Case.

In the alternative, the Court could tax some reasonable proportion of ALU's costs—certainly no more than 50%—to the Appealed Case. The only untenable option is what ALU proposes: taxing the *entirety* of ALU's costs, from both the Appealed and Stayed Cases, in the Appealed Case. ALU's proposal ignores the reality that no judgment has been entered in the Stayed Case and therefore no party has yet been awarded costs. Instead, ALU effectively asks the Court to award costs incurred in a case where no party has yet prevailed, in flagrant violation of Rule 54(d) and section 1920.

  **C.** **Several Categories of ALU's Purported Costs Are Not Taxable**

Federal Rule of Civil Procedure 54(d) authorizes courts to allow costs to a prevailing party. The categories of taxable costs are defined in 28 U.S.C. § 1920; costs "above and beyond" those enumerated by section 1920 cannot be taxed. *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).

Even within the categories of costs enumerated by section 1920, courts have considerable discretion whether to allow taxation of costs. *Id.* at 442 (Section 1920 is "phrased permissively because Rule 54(d) generally grants a federal court discretion to refuse to tax costs in favor of the prevailing party."); *Obey v. Frisco Med. Ctr. L.L.P.*, No. 4:13-CV-00656, 2015 WL 1951581, at *1 (E.D. Tex. Apr. 29, 2015) ("The district court has wide discretion to determine whether the prevailing party is entitled to an award of costs for claimed expenses.").

A prevailing party costs bears the burden of proving that the costs it seeks are properly recoverable. *See Ameranth, Inc. v. Menusoft Sys. Corp.*, No. 2:07-CV-271, 2011 WL 13196295, at *1 (E.D. Tex. May 25, 2011) ("Although the prevailing party is entitled to its costs, the prevailing party must still demonstrate that its costs are recoverable under Fifth Circuit precedent."); *Serling v. Am. Airlines, Inc.*, 237 F. App'x 972, 976 (5th Cir. 2007) ("[i]tems

proposed by winning parties as costs should always be given careful scrutiny") (quoting *Farmer v. Arabian Am. Oil Co.*, 379 U.S. 227, 235 (1964)).

As explained above, it is premature and improper for ALU to seek taxation of costs at all at this stage. But even if now were the proper time to address ALU's proposed bill of costs, many of the costs that ALU seeks to recover are improper and unsupported. ALU bears the burden of proving that each cost it seeks to recover is proper under section 1920 and Fifth Circuit precedent; ALU has failed to do so, and therefore is not entitled to recover at least the following categories of costs.

### 1. ALU Seeks to Tax Incidental Deposition Costs that Are Not Recoverable

ALU seeks to recover various costs related to depositions, including video synchronization, processing and delivering transcripts and videos, and color-printing exhibits. These costs are not taxable, as they were incurred for the convenience of counsel or were merely incidental to the deposition, and therefore not recoverable.

First, ALU seeks to recover fees for video synchronization of various depositions. Dkt. No. 861, at 3-5. Video synchronization is not a necessary cost, but a cost incurred for the convenience of counsel, and therefore not recoverable. *Paez v. Gelboym*, 2013 WL 1950057, *2 (E.D. Tex. 2013) ("Video Synchronization is an incidental charge that is not allowable under section 1920" and not taxable); *Motion Games, LLC v. Nintendo Co.*, 2016 WL 9136171, *5 (E.D. Tex. 2016) ("Additional charges for deposition enhancements provided merely for the convenience of counsel, rather than necessity, are not taxable."). The Fifth Circuit has held that "charges incurred merely for the convenience of one party's counsel should not be taxed to the other." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991). Therefore, ALU should not be able to recover its costs for video synchronization.

ALU also seeks costs for processing and delivering deposition transcripts and videos. Dkt. No. 861, at 3-5. However, those costs are merely incidental to the depositions and are not recoverable under section 1920. *Kroy IP Holdings, LLC v. Safeway, Inc.*, 2015 WL 4776501, *4

(E.D. Tex.) ("[T]he charges for delivering the deposition transcript, like the costs of postage, are incidental expenses unrecoverable under section 1920(2)"); *Feld Motor Sports, Inc. v. Traxxas, LP*, 2016 WL 2758183, *20 (E.D. Tex.) (transcript shipping and handling fees not taxable); *Paez*, 2013 WL 1950057 at *2 ("postage fees" are not taxable); *Maurice Mitchell Innovations, L.P. v. Intel Corp.*, 491 F. Supp. 2d 684, 688 (E.D. Tex. 2007) (incidental deposition costs such as for "parking, real time reporting, rough drafts, condensed transcript, ASCII, expedited delivery, and FEDEX charges" not taxable); *Motion Games*, 2016 WL 9136171, *5 ("Incidental expenses related to taking the depositions, such as the costs of parking, expedited delivery, and postage, are generally not recoverable.").

Oyster further objects to the taxation of ALU's costs for color scanning exhibits used at depositions, which are not recoverable absent a demonstration that color printing (as opposed to black-and-white printing) was necessary. *Kroy*, 2015 WL 4776501, at *4. Having used these exhibits at deposition, ALU must have already had color versions of these documents; paying a premium to scan the exhibits in color after they were used at the deposition is not a necessary charge. Instead of attempting to show that the color scans were necessary, ALU states only that "preserving the color content of the exhibits was *often* critical to understanding the document" and that "*many* of the technical specification drawings of ALU products are color coded" (Dkt. No. 861, at 5-6) (emphasis added). It is not adequate to claim, without evidence or illustration, that color printing was "often" necessary for "many" of the exhibits; such vague assertions raise obvious questions about which exhibits were actually necessary to print in color for what reasons—and why Oyster should be expected to pay for any color printing that was apparently *not* necessary.

Finally, Oyster objects to the taxation of ALU's costs for the videos of the Lebby *Markman* deposition and of the Buck deposition, as it was not reasonable to expect that either video would be used at a hearing or at trial. *See Motion Games*, 2016 WL 9136171, at *6-7 (denying costs for deposition video in the absence of evidence that the witness would be absent from trial or that printed transcripts were insufficient for impeachment). The Lebby *Markman*

7

deposition related to claim construction, which is not tried to the jury. Furthermore, Dr. Buck is ALU's own non-infringement expert witness. It is therefore extremely unlikely that ALU would choose—or even be permitted under the Federal Rules—to present his testimony via the deposition taken by Oyster, rather than bringing him to testify live at trial. Obtaining the video of these depositions, in addition to the printed transcript, was not necessary.

Each of the foregoing deposition-related costs is unrecoverable and should not be taxed to Oyster, but should be borne by ALU. A list of Oyster's objections to ALU's proposed costs in this category, including video synchronization, unnecessary videos, and incidental costs such as delivery and color exhibit costs, are listed in the following table:

| Description | Invoice Date | Amount objected to | Invoice Citation | Specific objections |
| --- | --- | --- | --- | --- |
| Dr. Michael S. Lebby (video and transcript sync) | 9/21/2017 | $223.78 | Dkt. No. 861, at 3; Dkt. No. 861-2 (Ex. 1), at 4 | Video sync is not recoverable; no showing of necessity for both transcript and video of *Markman* expert; not reasonable to expect that *Markman* expert video would be used at hearing or at trial. |
| William Allan Thompson (color copies of deposition exhibits) | 12/15/17 | $416.00 | Dkt. No. 861, at 3; Dkt. No. 861-2 (Ex. 1), at 10 | Costs of color copies of exhibits are not recoverable. |
| Mark Roche (video conversion and sync) | 01/23/18 | $539.30 | Dkt. No. 861, at 4; Dkt. No. 861-2 (Ex. 1), at 16 | Invoice provides no explanation of what costs are included or how ALU's share was computed; video conversion and sync are not recoverable. |
| George Papen (color copies of deposition exhibits) | 02/26/18 | $101.25 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 18 | Costs of color copies of exhibits are not recoverable. |
| Stephen E. Dell (video synchronization) | 3/14/18 | $875.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 24 | Video synchronization is not recoverable. |

8

| Name | Date | Amount | Docket | Reason |
|---|---|---|---|---|
| John Dallesasse (video synchronization) | 3/16/18 | $875.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 25 | Video synchronization is not recoverable. |
| Isaac Foster, Jr. (color copies of deposition exhibits) | 4/25/18 | $9.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 26 | Costs of color copies of exhibits are not recoverable. |
| Petra Loer (video synchronization) | 5/4/18 | $150.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 29 | Video synchronization is not recoverable. |
| Seth Page (video synchronization) | 5/16/18 | $210.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 30 | Video synchronization is not recoverable. |
| Jeff Ronaldi (video synchronization) | 5/24/18 | $101.50 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 31 | Video synchronization is not recoverable. |
| Jeff Ronaldi (video synchronization) | 5/24/18 | $663.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 32 | Video synchronization is not recoverable. |
| Mark Roche (video synchronization) | 5/24/18 | $408.75 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 33 | Video synchronization is not recoverable. |
| Bill Gehris (video synchronization) | 5/24/18 | $417.50 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 34 | Video synchronization is not recoverable. |
| Peter "Rocky" Snawerdt (video synchronization) | 5/24/18 | $694.50 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 35 | Video synchronization is not recoverable. |
| Isaac Foster, Jr. (video synchronization) | 5/24/18 | $722.75 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 36 | Video synchronization is not recoverable. |
| John Buck (video synchronization) | 5/31/18 | $900.00 | Dkt. No. 861, at 4; Dkt. No. 861-2, at 37-38 | Video synchronization is not recoverable. |
| Stephen E. Dell (video synchronization) | 6/5/18 | $100.00 | Dkt. No. 861, at 5; | Video synchronization is not recoverable. |

| | | | | |
|---|---|---|---|---|
| | | | Dkt. No. 861-2, at 41 | |
| Jeff Ronaldi (video synchronization) | 8/3/18 | $200.00 | Dkt. No. 861, at 5; Dkt. No. 861-2, at 46 | Video synchronization is not recoverable. |
| Dr. Michael Lebby (video synchronization and delivery) | 8/9/18 | $728.36 | Dkt. No. 861, at 5; Dkt. No. 861-2, at 53 | Video synchronization is not recoverable; delivery of video files is not recoverable. |
| Stephen Dell (video synchronization and delivery) | 8/9/18 | $188.34 | Dkt. No. 861, at 5; Dkt. No. 861-2, at 57 | Video synchronization is not recoverable; delivery of video files is not recoverable. |
| **TOTAL OBJECTED COSTS:** | | **$8,524.03** | | |

### 2. ALU Seeks to Recover Deposits Forfeited Due to the Trial Continuance Without Legal Justification

Oyster further objects to taxation of costs of $3,348 for the Hampton Inn room block (Dkt. No. 861, at 7); $1,836 for the Blue Frog catering services deposit (*id.*), and $933.59 for Dr. Papen's trial airfare (*id.* at 6-7). ALU cites no authority in support of its suggestion that nonrefundable deposits, cancellation fees, or unused airfare, forfeited as the result of a continued trial date, are taxable costs under 28 U.S.C. § 1920. On the contrary, there is Fifth Circuit law suggesting that costs for a party witness who did not testify because of a court ruling in favor of that party are not taxable. *Coats v. Penrod Drilling Corp.*, 5 F.3d 877 (5th Cir. 1993) (affirming denial of costs for expert witness who attended trial but did not testify as a result of a directed verdict).

ALU bears the burden of establishing that its costs are recoverable under statute and Fifth Circuit precedent. *Ameranth, Inc.*, 2011 WL 13196295, at *1 ("[T]he prevailing party must still demonstrate that its costs are recoverable under Fifth Circuit precedent."). Having failed to do so, ALU cannot recover its costs for its nonrefundable deposits, cancellation fees, and unused airfare.

Furthermore, even if ALU were entitled to recover these costs, ALU's approach to calculating *per diem* costs significantly overstates the likely appropriate charges for those costs.

ALU's calculations for hotel rooms and catering assume that each of ALU's six witnesses would have spent an entire six days at the trial location. Given that the entire trial was expected to last only five days, it is doubtful that each of these witnesses would have needed to remain in Texas for six entire days. This seems particularly unlikely in the case of ALU's employee fact witnesses, who likely would not have been permitted to attend *any* of the trial proceedings aside from their own testimony.

### 3. ALU Seeks to Recover Unspecified and Unsupported Costs for Copying, Binding, and Data Processing

ALU seeks approximately $12,000 in costs for copying, binding, and data processing. Dkt. No. 861 at 9-12; Dkt. No. 861-4 (Ex. 3). However, ALU offers nearly no information about what documents or types of document were copied, how many copies of each document were made, what the purpose of copying the documents was, or why the copies were necessary. From the information provided, it is impossible to determine whether the costs were allowable, and Oyster objects on that basis. Recovery of photocopying costs requires more than the mere submission of invoices for copying. Rather, the party seeking to recover photocopying costs must identify the categories of documents copied and their use, so that the Court may determine whether they were necessary for trial and therefore properly taxable. *Freeny v. Apple Inc.*, 2014 WL 6847808, *2-*3 (E.D. Tex.) (collecting cases); *Maurice Mitchell*, 491 F. Supp. 2d at 689; *Home Depot, U.S.A., Inc. v. Federal Ins. Co.*, 2003 WL 470545, *2 (E.D. Tex.); *Sieber & Calicutt v. Sphere Drake Ins. Co.*, 2003 WL 470546, *2 (E.D. Tex.); *Kroy*, 2015 WL 4776501, *5; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, 2015 WL 164072, *5. Instead of providing that information, ALU loosely identifies the events that various copying charges related to, such as "copying of documents in preparation for depositions of David Taylor and Jeff Ronaldi" ($955.50) or "copying of documents for the 8/9/18 pre-trial hearing" (two days' charges of $1,025.53 and $1,874.29, for a total of $2,899.82). Even more-detailed invoices were rejected as insufficient in *Kroy*. 2015 WL 4776501, at *6 (rejecting invoices that listed the associated deposition and number of copies made).

Oyster further objects to the charge for "TIFF Conversion" ($200). Dkt. No. 861, at 9. First, ALU does not even indicate which invoice is associated with this charge. Oyster assumes that the four-line invoice submitted at page 9 of ALU's Exhibit 3 is intended to justify this charge; notably, that invoice does not even mention "TIFF Conversion." Dkt. No. 861-4, at 9. Furthermore, it is unclear whether the fees incurred included the cost of Bates labeling, which is not a taxable cost. *DSS Tech. Management Inc. v. TSMC, Ltd.*, 2016 WL 5942316, *8 (E.D. Tex.). Therefore, Oyster objects to this charge both because it is unsupported by sufficient documentation and to the extent it includes electronic Bates labeling.

ALU need not account for every printed page, but it certainly must do more to show that its printing costs were necessary and appropriate. *Id.* ("While courts do not 'expect a prevailing party to identify every Xerox copy made for use in the course of legal proceedings,' they do 'require some demonstration that reproduction costs necessarily result from that litigation.'") (quoting *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991)). Absent an adequate demonstration that ALU's printing charges were necessary to the litigation, Oyster cannot be expected to pay the thousands of dollars ALU seeks.

### 4. ALU's Costs for its *Markman* Tutorial and Trial Graphics Consultants Are Not Taxable Without Advance Court Approval

ALU seeks to recover its costs for production of its *Markman* tutorial and trial graphics (approximately $14,000). Dkt. No. 861, at 9-12; Dkt. No. 861-4 (Ex. 3), at 15-22. Costs for a technology tutorial are not taxable unless the parties are expressly ordered to submit a tutorial. *DSS*, 2016 WL 5942316, *7 (refusing to tax costs of technology tutorial where "[t]he Court did not require a tutorial"); *Motion Games*, 2016 WL 9136171, *9 (same, noting that "courts in [the Eastern District of Texas] have generally not allowed costs incurred in connection with Markman Hearing technical tutorials"); *Erfindergemeinschaft UroPep GbR v. Eli Lilly and Co.*, 2017 WL 3044594, *2-*3 (E.D. Tex.) (same). The Court's docket control order in this action provided a deadline for any tutorial that the parties wished to provide, but made it clear that the tutorial was optional. *E.g.*, Dkt. No. 72 (4/19/2017 Docket Control Order), at 4 (listing

September 19, 2017 as the deadline to "Submit Technical Tutorials (*if any*)") (emphasis added). Notably, at least two courts have refused to tax costs for technology tutorials in cases where the trial court used *precisely* the same language to set deadlines to "Submit Technical Tutorials (if any)." *DSS*, 2016 WL 5942316, *7; *Erfindergemeinschaft UroPep GbR*, 2017 WL 3044594, *2. Because technology tutorials were not required, ALU cannot recover its costs for producing a tutorial.

Furthermore, ALU seeks costs for trial graphics, but those costs are not taxable unless the costs are approved in advance by the court. *Kroy*, 2015 WL 4776501, *2-3 (citing *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir. 1995)); *Erfindergemeinschaft*, 2017 WL 3044594, *4-5 (same); *see Summit Tech., Inc. v. Nidek Co.*, 435 F.3d 1371, 1374-78 (Fed. Cir. 2006) (denying costs for trial graphics consultant); *Kohus v. Toys 'R' Us, Inc.*, 282 F.3d 1355, 1359 (Fed. Cir. 2002) (denying costs for video animation used at trial). ALU makes no claim that it even attempted to gain approval for its trial graphics costs; therefore, the costs are not taxable.

Furthermore, even if ALU's graphics consulting costs were recoverable (they are not), Oyster further objects that ALU's invoices provide insufficient information to determine (1) what types of trial graphics were produced; (2) whether the trial graphics were necessary for trial; or (3) what fraction of the consultants' time was spent on creating graphics, as opposed to assisting counsel with presentation strategy. The costs also seem excessive and unnecessary; for example, ALU seeks $600 for three hours that a graphics consultant spent on August 4, 2018 watching the Federal Judicial Center's patent video and preparing slides based on it. Dkt. No. 861-4, at 22.

ALU argues that "nothing in [section 1920] requires any cost to be *required*; those costs must simply be reasonable at the time incurred." But even the case ALU cites to support that proposition shows that multimedia professional costs are taxable only when they are "reasonable *and necessary*" for trial. *Eolas Techs. Inc. v. Adobe Sys., Inc.*, 891 F. Supp. 2d 803, 808 (E.D. Tex. 2012), *aff'd sub nom. Eolas Techs. Inc. v. Amazon.com, Inc.*, 521 F. App'x 928 (Fed. Cir.

13

2013).  ALU has utterly failed to show that any of its graphics costs were necessary for trial, let alone approved in advance by the Court.  Therefore, ALU's costs for *Markman* and trial graphics are not taxable.

Dated: January 7, 2019

Respectfully submitted,

**OYSTER OPTICS, LLC**

By: /s/ *Reza Mirzaie*
Marc A. Fenster (CA SBN 181067)
E-mail: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
E-mail: rmirzaie@raklaw.com
Neil A. Rubin (CA SBN 250761)
Email: nrubin@raklaw.com
Theresa M. Troupson (CA SBN 301215)
E-mail: ttroupson@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025
Telephone:    310/826-7474
Facsimile:     310/826-6991

T. John Ward, Jr. (TX SBN 00794818)
E-mail: jw@wsfirm.com
Claire Abernathy Henry (TX SBN 24053063)
E-mail: claire@wsfirm.com
Andrea L. Fair (TX SBN 24078488)
E-mail: andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 13231
Longview, Texas 75601
Tele: 903/757-6400
Facsimile 903/757-2323
**Attorneys for Plaintiff**
**OYSTER OPTICS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on January 7, 2019, with an unredacted copy of this document via electronic mail.

                                                               /s/ *Reza Mirzaie*